**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

JOSEPH MICHAEL ARPAIO, an individual
Fountain Hills, AZ

                Plaintiff,

v.

MICHELLE COTTLE, an individual
c/o New York Times
1627 I Street NW, #700
Washington, DC 20006

And

THE NEW YORK TIMES
1627 I Street NW, #700
Washington, DC 20006

                Defendants.

Case No.:

**COMPLAINT**

## I.     INTRODUCTION

Plaintiff Sheriff Joseph Michael Arpaio ("Plaintiff Arpaio") brings this Complaint for defamations against Michelle Cottle ("Cottle") and The New York Times ("NYT").

## II.    JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III.   PARTIES

3.     Plaintiff Arpaio is an individual, natural person who is a citizen of the state of Arizona.

4.      Defendant Cottle is an individual, natural person who is, on information and belief, a citizen of New York.

5.      Defendant NYT is a nationwide news publication that published as set forth herein in this judicial district and with a major news bureau in this judicial district.

## IV.      STANDING

6.      Plaintiff Arpaio has standing to bring this action because he has been directly affected by the unlawful conduct complained herein.  Their injuries are proximately related to the conduct of Defendants Cottle and NYT.

## V.      FACTS

### Background Facts

7.      Plaintiff Arpaio is a long-time member of the law enforcement community who served as a Washington, D.C. and Las Vegas police officer following his honorable army discharge in 1953.

8.      In November of 1957, Plaintiff Arpaio was appointed as a special agent with the Federal Bureau of Narcotics, which later became part of the Drug Enforcement Agency ("DEA"), which is headquartered in Washington, D.C.

9.      Following his career with the DEA, Plaintiff Arpaio was elected as sheriff of Maricopa County, Arizona in 1993. He held that position for almost 25 years or until January 1, 2017.

10.      In January of 2018, Plaintiff Arpaio announced that he would run for U.S. Senate in Arizona. He was defeated in the August 28, 2018 Republican primary.

11.    Plaintiff Arpaio intends to run for U.S. Senate again in 2020 for the seat vacated by the late senator John McCain, which is currently held by John Kyl, a placeholder until the 2020 special election can take place.

## Facts Pertaining to the Defamatory Publication

12.    On August 29, 2018, Defendant NYT published an article titled "Well, at Least Sheriff Joe Isn't Going to Congress- Arpaio's Loss in Arizona's Senate Republican Primary is a Fitting End to the Public Life of a Truly Sadistic Man." (the "Defamatory Article") written by Defendant Michelle Cottle. Exhibit 1.

13.    While the Defamatory Article is strategically titled as an opinion piece, it contains several false, defamatory factual assertions concerning Plaintiff Arpaio.

14.    These false factual assertions are carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community - which is centered in this judicial district – as well as with Republican establishment and donors, which is also centered in this judicial district, in order to prevent him from successfully run for U.S. Senate in 2020 or another public office as a Republican.

15.    The false and defamatory factual representations and statements contained in the Defamatory Article include but are not limited to:

> His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.

The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.

At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.

A copy of this Defamatory Article is attached as Exhibit 1 and its contents are wholly incorporated herein by reference.

16.     The Defamatory Article further publically places Plaintiff in a false light that is offensive to any reasonable person using false statements, representations, or imputations.

17.     In addition to the statements set forth in Paragraph 15, the Defamatory Article includes, but is not limited to the following statements that portray Plaintiff Arpaio in a false light as well as the totality of the article taken as a whole:

Joe Arpaio, the former sheriff of Maricopa County, Ariz., who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-deserved criminal record if President Trump, a staunch admirer of Mr. Arpaio's bare-knuckle approach to law enforcement, had not granted him a pardon.

Cast aside and left to wallow in the knowledge that his moment has passed, he has a fitting end to the public life of a true American villain.

It was no secret that Mr. Arpaio's methods often crossed the line into the not-so-legal

For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again.

18.     The false and fraudulent statements including outright lies in the form of false or misleading facts or false and misleading mixed opinion and fact, in the Defamatory Article, which were widely published in this judicial district, nationally and internationally and have severely harmed Plaintiff Arpaio's reputation and caused him financial damage.

19.     Plaintiff Arpaio's distinguished 55-year law enforcement and political career has been severely harmed, as his reputation has been severely damaged among and with the Republican establishment, which is centered in the District of Columbia.

20.     Plaintiff Arpaio's chances and prospects of election to the U.S. Senate in 2020 have been severely harmed by the publication of false and fraudulent facts in the Defamatory Article. This also harms Plaintiff financially, as his chances of obtaining funding from the Republican establishment and donors for the 2020 election have been damaged by the publication of false and fraudulent representations in the Defamatory Article.

21.     Plaintiff Arpaio's reputation has also been severely harmed in the law enforcement community, which is centered in this judicial district, and includes the DEA, where he served for 26 years as an agent and top official.

## FIRST CAUSE OF ACTION
### *Defamation Per Se*

22.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

23.     Defendants made and published false and defamatory statements concerning Plaintiff Arpaio by calling, representing and publishing within this district, the nation and the world, with malice, that Plaintiff Arpaio was directly responsible for numerous inmate deaths during his time as sheriff of Maricopa County.

24.     Defendants made and published false and defamatory statements concerning Plaintiff Arpaio by calling, representing and publishing within this district, the nation and the world, with malice, that Plaintiff Arpaio was directly responsible for numerous abused, assaulted, and battered inmates during his time as sheriff of Maricopa County.

25.    The statements at issue for this cause of action are contained in ¶ 15 of this Complaint. They include, but are not limited to:

> His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.

> The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.

> At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.

26.    These statements are defamatory per se because they falsely accuse Plaintiff Arpaio of committing a serious crime, which amounts to a crime of moral turpitude. As defamation per se, damage to Plaintiff Arpaio is presumed as a matter of law.

27.    Defendants acted in concert and are therefore jointly and severely liable as joint tortfeasors. The statements were made by Defendant Cottle and then published and/or broadcast in this district, nationwide and throughout the world by Defendant NYT.

28.    Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity.

29.    Defendants' statements and the publishing/broadcasting thereof were made without any privilege.

30.    As a direct and proximate result of Defendants and their agents' extreme, outrageous and malicious defamatory conduct set forth above, Plaintiff Arpaio has been the

subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.

## SECOND CAUSE OF ACTION
### *Tortious Interference with Prospective Business Relations*

31.    Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including with the same force and effect, as if fully set forth herein again at length.

32.    Plaintiff Arpaio has a prospective business relationship with the Republican National Committee ("RNC"), and its National Republican Senate Campaign Committee ("NRSC") which is headquartered in Washington D.C., as well as their affiliated political action committees and entities and persons, including donors.

33.    The RNC and its RNCC, in conjunction with affiliated political action committees and entities and donors routinely provide funding to Republican political candidates for their campaigns. Plaintiff Arpaio ran for U.S. Senate in 2018 as a Republican, and intends to run again for a U.S. Senate seat or other public office in 2020 as a Republican and ardent supporter of President Donald J. Trump and his administration.

34.    Defendants are aware of these prospective business relationships and thus, given their malice and leftist enmity of Arpaio sought to destroy them with the publication of the subject Defamatory Article.

35.    Defendants published the Defamatory Article to influence the RNC, the RNCC and affiliated political action committee and persons, and other donors, to withhold funding for Plaintiff Arpaio's 2020 political campaign by smearing and destroying his reputation and standing in his law enforcement, government and political community.

36.     Plaintiff Arpaio has been harmed as to his reputation as "America's Toughest Sheriff" and financially by the publication of the Defamatory Article.

### THIRD CAUSE OF ACTION
*False Light*

37.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including with the same force and effect, as if fully set forth herein again at length.

38.     The Defamatory Article falsely and very publically portrayed Plaintiff Arpaio in a negative, false light.

39.     The Defamatory Article contained false statements, representations, or imputations understood to be of and concerning Plaintiff Arpaio.

40.     The statements at issue are found in ¶¶ 15-17 of this Complaint, and include but are not limited to:

> His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.

> The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.

> At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.

> Joe Arpaio, the former sheriff of Maricopa County, Ariz., who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-

deserved criminal record if President Trump, a staunch admirer of Mr. Arpaio's bare-knuckle approach to law enforcement, had not granted him a pardon.

Cast aside and left to wallow in the knowledge that his moment has passed, he has a fitting end to the public life of a true American villain.

It was no secret that Mr. Arpaio's methods often crossed the line into the not-so-legal

For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again.

41.    These statements are misleading and false.

42.    These statements, made with malice, place Plaintiff in a false light that would be offensive to a reasonable person.

43.    As a direct and proximate result of Defendants and their agents' extreme, outrageous and malicious defamatory conduct set forth above, Plaintiff Arpaio has been the subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against each Defendant, jointly and severally, as joint tortfeasors as follows:  actual, compensatory, and punitive damages in excess of $147,500,000 USD, as well as attorneys' fees and costs, and any other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts, as to all issues so triable.

DATED: October 16, 2018                                Respectfully submitted,

                                                       /s/ Larry Klayman
                                                       _____
                                                       Larry Klayman, Esq.

Chairman and General Counsel
FREEDOM WATCH, INC.
2020 Pennsylvania Ave NW Suite 345
Washington, DC, 20006
Email: leklayman@gmail.com
Tel: 310-595-0800
*Counsel for Plaintiff*

# The New York Times

# Well, at Least Sheriff Joe Isn't Going to Congress

Arpaio's loss in Arizona's Senate Republican primary is a fitting end to the public life of a truly sadistic man.

**By Michelle Cottle**
Ms. Cottle is a member of the editorial board.

Aug. 29, 2018

Let us pause for a moment to mark the loss of a fierce and tireless public servant: Joe Arpaio, the former sheriff of Maricopa County, Ariz., who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-deserved criminal record if President Trump, a staunch admirer of Mr. Arpaio's bare-knuckle approach to law enforcement, had not granted him a pardon.

To clarify, Mr. Arpaio the man has not passed. As of Tuesday, he was still very much alive and kicking, the proto-Trumpian embodiment of fearmongering ethnonationalism. Mr. Arpaio's dream of returning to elective office, however, has been dealt what is most likely a fatal blow by his loss in Arizona's Republican primary for the Senate. Cast aside and left to wallow in the knowledge that his moment has passed, he has a fitting end to the public life of a true American villain.

This defeat came as a surprise to no one. In the closing weeks of the race, his campaign had begun melting down. His staff was in chaos, and polls showed him trailing both Representative Martha McSally, Tuesday's victor, and Kelli Ward, an anti-immigration firebrand also courting the right wing of the party.

As "America's toughest sheriff," as Mr. Arpaio liked to call himself, prepares to ride off into the sunset, it bears recalling that he was so much more than a run-of-the-mill immigrant basher. His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.

*[Receive the day's most urgent debates right in your inbox by subscribing to the Opinion Today newsletter.]*

Indeed, many prisoners died in Mr. Arpaio's jail — at an alarming clip. The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained. Over the years, the county paid out tens of millions in wrongful death and injury settlements.

---

**Related**
*More on Joe Arpaio*

Opinion | The Editorial Board
**The Perils of a Pardon for Joe Arpaio**   Aug. 24, 2017



Opinion | Paul Krugman
**Fascism, American Style**   Aug. 28, 2017



---

At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.

Mr. Arpaio embraced the racist birther movement more energetically than most, starting an investigation aimed at exposing President Barack Obama's American birth certificate as a forgery. The inquiry ran five years, with Mr. Arpaio announcing his "troubling" findings in December of 2016, just weeks after having been voted out of office. Even many of his own constituents, it seemed, had grown weary of the sheriff's excesses. No matter, as of early this year, Mr. Arpaio was still claiming to have proved "100 percent" that Mr. Obama's birth certificate had been faked — to be clear, he has not — and suggesting he would revive the issue if elected to the Senate.

It was no secret that Mr. Arpaio's methods often crossed the line into the not-so-legal. In 2011, a federal district judge ordered the sheriff to end his practice of stopping and detaining people on no other grounds than suspecting them of being undocumented immigrants. Mr. Arpaio declined to oblige, secure in the rightness of his own judgment. The legal battle dragged on until last summer, when he was found guilty of criminal contempt of court for blatantly thumbing his nose at the law.

Such unwillingness to bow to an uppity judiciary surely impressed Mr. Trump, who sees his own judgment as superior to any moral or legal precept. In this way, Mr. Arpaio was arguably the perfect pick to be the very first person pardoned by this president. The two men are brothers in arms, fighting the good fight against the invading hordes of immigrants — and their liberal enablers, of course. And if that requires dismissing the Constitution and destroying the rule of law, so be it. What true patriot would object to a few tent cities or human rights violations when the American way of life is in mortal peril?

In announcing the pardon last August, Mr. Trump praised Mr. Arpaio as an "American patriot." The official statement by the White House gushed: "Throughout his time as Sheriff, Arpaio continued his life's work of protecting the public from the scourges of crime and illegal immigration." To Mr. Trump's fans, this was another welcome sign of the president's commitment to keeping them safe from The Other.

Not everyone in the president's party was pleased. Members of his administration reportedly advised against the pardon as too controversial. It was widely noted that the announcement was made in the hours right before Hurricane Harvey slammed the Gulf Coast, presumably with an eye toward minimizing the negative media coverage of the pardon while journalists were busy reporting on the storm. (For his part, Mr. Trump later claimed that the pardon actually had been timed to take advantage of the higher ratings generated by Harvey watchers.)

Even so, John McCain, the Arizona senator and frequent Trump critic who passed away on Saturday, made his dismay known. "The president has the authority to make this pardon," he said in a statement, "but doing so at this time undermines his claim for the respect of rule of law, as Mr. Arpaio has shown no remorse for his actions."

Certainly, Mr. Arpaio showed little sign of remorse on the campaign trail. In a recent interview with The Times, he rambled about all the Mexican rapists and murderers who filled his jails back in the day, and he said the answer to the debate over Dreamers was simple: Deport all 700,000 of them back to their home countries.

The former sheriff also made clear that, despite all the legal drama swirling around the president, his loyalty to Mr. Trump was steadfast. "You can't support people just because they're convicted?" he asked rhetorically. "No matter what he's convicted of, I'm still going to call it a witch hunt, so of course I'll stand by him."

Some might consider it ungenerous to celebrate Mr. Arpaio's electoral failure and continuing slide into irrelevance. But the man has a long and storied history of mistreating people in unfortunate circumstances, so it seems only appropriate to return the favor.

For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again. In the current political climate, it may be enough that Arizona Republicans solidly rejected him.

We recommend Sheriff Joe isn't the end of the world - The New York Times

*Follow The New York Times Opinion section on Facebook and Twitter (@NYTopinion), and sign up for the Opinion Today newsletter.*

A version of this article appears in print on Aug. 29, 2018, on Page A22 of the New York edition with the headline: So Long, Sheriff Joe



# CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

## I. (a) PLAINTIFFS

## DEFENDANTS

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
     Plaintiff

○ 3 Federal Question
     (U.S. Government Not a Party)

○ 2 U.S. Government
     Defendant

○ 4 Diversity
     (Indicate Citizenship of
     Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR
PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.  *Antitrust***

410   Antitrust

○ **B.  *Personal Injury/
     Malpractice***

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
367 Health Care/Pharmaceutical
     Personal Injury Product Liability
368 Asbestos Product Liability

○ **C.  *Administrative Agency
     Review***

151 Medicare Act

**Social Security**
861 HIA (1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g))
864 SSID Title XVI
865 RSI (405(g))
**Other Statutes**
891 Agricultural Acts
893 Environmental Matters
890 Other Statutory Actions (If
     Administrative Agency is
     Involved)

○ **D.  *Temporary Restraining
     Order/Preliminary
     Injunction***

Any nature of suit from any category
may be selected for this category of
case assignment.

*(If Antitrust, then A governs)*

○ **E.  *General Civil (Other)***          OR          ○ **F.  *Pro Se General Civil***

**Real Property**
210 Land Condemnation
220 Foreclosure
230 Rent, Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

**Personal Property**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property
     Damage
385 Property Damage
     Product Liability

**Bankruptcy**
422 Appeal 27 USC 158
423 Withdrawal 28 USC 157

**Prisoner Petitions**
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Conditions
560 Civil Detainee – Conditions
     of Confinement

**Property Rights**
820 Copyrights
830 Patent
835 Patent – Abbreviated New
     Drug Application
840 Trademark

**Federal Tax Suits**
870 Taxes (US plaintiff or
     defendant)
871 IRS-Third Party 26 USC
     7609

**Forfeiture/Penalty**
625 Drug Related Seizure of
     Property 21 USC 881
690 Other

**Other Statutes**
375 False Claims Act
376 Qui Tam (31 USC
     3729(a))
400 State  Reapportionment
430 Banks & Banking
450 Commerce/ICC
     Rates/etc.
460 Deportation

462 Naturalization
     Application
465 Other Immigration
     Actions
470 Racketeer Influenced
     & Corrupt Organization
480 Consumer Credit
490 Cable/Satellite TV
850 Securities/Commodities/
     Exchange
896 Arbitration
899 Administrative Procedure
     Act/Review or Appeal of
     Agency Decision
950 Constitutionality of State
     Statutes
890 Other Statutory Actions
     (if not administrative agency
     review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| **530 Habeas Corpus – General**<br>**510 Motion/Vacate Sentence**<br>**463 Habeas Corpus – Alien Detainee** | **442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | **895 Freedom of Information Act**<br>**890 Other Statutory Actions (if Privacy Act)**<br><br><br>**\*(If pro se, select this deck)\*** | **152 Recovery of Defaulted Student Loan (excluding veterans)** |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| **710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**740 Labor Railway Act**<br>**751 Family and Medical Leave Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights Act)**<br>**443 Housing/Accommodations**<br>**440 Other Civil Rights**<br>**445 Americans w/Disabilities – Employment**<br>**446 Americans w/Disabilities – Other**<br>**448 Education** | **110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment & Enforcement of Judgment**<br>**153 Recovery of Overpayment of Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **441 Civil Rights – Voting (if Voting Rights Act)** |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23  **DEMAND $**  **JURY DEMAND:**  Check YES only if demanded in complaint  YES  NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES  NO  If yes, please complete related case form

DATE: _____  SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | | |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify)*:
.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff(s)* | )<br>)<br>)<br>)<br>) | |
| v. | ) | Civil Action No. |
| _____ | )<br>)<br>)<br>)<br>) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: