IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------- X
                                         :
                                         :
**JOSEPH MICHAEL ARPAIO**                :
                                         :
              **Plaintiff,**             :
                                         :  Case No. No. 1:18-cv-02387-APM
**v.**                                   :
                                         :
                                         :
**MICHELLE COTTLE, et al.**              :
                                         :
              **Defendants**.            :
                                         :
---------------------------------------- X

# DEFENDANTS' SPECIAL MOTION TO DISMISS
# PURSUANT TO THE D.C. ANTI-SLAPP ACT

Pursuant to the District of Columbia Anti-SLAPP Act of 2010, D.C. Code § 16-5502(a) ("the Anti-SLAPP Act"), Defendants Michelle Cottle and The New York Times Company, incorrectly sued as "New York Times" (together, "The Times"), by and through their undersigned counsel, respectfully move for an order dismissing Plaintiff's Complaint with prejudice. For the reasons set forth more fully in the accompanying Memorandum of Law, the challenged column published by The Times is protected by the Anti-SLAPP Act, as it constitutes an "[a]ct in furtherance of the right of advocacy on issues of public interest," D.C. Code § 16-5502(a), and Plaintiff is unable to carry his burden of demonstrating that he is "likely to succeed on the merits" of his claims for defamation, tortious interference with prospective business relations, and false light invasion of privacy claims, D.C. Code § 16-5502(b). Accordingly, The Times respectfully requests that the Court grant its special motion to dismiss and enter judgment in its favor dismissing the Complaint with prejudice.

The Times reserves the right to file a motion seeking an award of the costs of litigation hereof, including attorney's fees, as provided by D.C. Code § 16-5504(a), within fourteen days after the entry of judgment, following a grant of its anti-SLAPP motion. Fed. R. Civ. P. 54(d)(2).

Dated: January 4, 2019

Respectfully submitted,

**BALLARD SPAHR LLP**

 /s/ Jay Ward Brown
Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Dana R. Green (D.C. Bar No. 1005174)
1909 K. Street, NW, 12th Floor
Washington, D.C. 20006-1157
Telephone: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
greendana@ballardspahr.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
                                                                      :
                                                                      :
**JOSEPH MICHAEL ARPAIO**                                             :
                                                                      :
                              **Plaintiff,**                          :
                                                                      :   Case No. No. 1:18-cv-02387-APM
v.                                                                    :
                                                                      :
                                                                      :
**MICHELLE COTTLE, et al.**                                           :
                                                                      :
                              **Defendants**.                         :
                                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
```

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO DISMISS PURSUANT TO THE D.C. ANTI-SLAPP ACT**


BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Dana R. Green (D.C. Bar No. 1005174)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
greendana@ballardspahr.com

*Counsel for Defendants*

Date: January 4, 2019

**PRELIMINARY STATEMENT**

This lawsuit—brought by a public official seeking $147,500,000 in damages for the publication of a column in *The New York Times* commenting upon a federal election that summarized the public record concerning that official's controversial actions in office—is, by the admissions of the plaintiff's own attorney, quite deliberately a strategic legal action to punish speech. *See, e.g.,* GoFundMe Campaign, *Support Arpaio NY Times Takedown!* (Oct. 31, 2018), https://tinyurl.com/yczl2qnr (seeking, through counsel, donations to help "TAKE DOWN THE EVIL 'FAKE NEWS' NEW YORK TIMES" in this action, "filed as part of Freedom Watch's Leftist Media Strike Force, which seeks to hold the dishonest and unhinged 'fake news' left, and other irresponsible and lawless publications, accountable to the rule of law"). As demonstrated by defendants Michelle Cottle and The New York Times Company (together, "The Times") in their simultaneously-filed motion pursuant to Rule 12(b)(6), plaintiff Joseph "Joe" Arpaio's Complaint fails to state a claim as a matter of law and should be dismissed. Dkt. 8 (the "Rule 12(b)(6) Memo"). Pursuant to the D.C. Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.* ("the Act"), The Times should also be awarded its attorneys' fees.[1]

The Times recognizes that the Court previously has held that it "must follow the clear guidance of the D.C. Circuit" and find the Act inapplicable in federal court diversity actions like this one. *Libre by Nexus v. BuzzFeed*, 311 F. Supp. 3d 149, 158-61 (D.D.C. 2018) (Mehta, J.) (quoting *Deripaska v. Associated Press*, 2017 WL 8896059, at *3 (D.D.C. Oct. 17, 2017)). The Times respectfully brings this motion in order to preserve the issue for appeal. At bottom,

---

[1] "SLAPP stands for 'strategic lawsuits against public participation' and refers to suits 'aimed to punish or prevent the expression of opposing points of view.'" *Sherrod v. Breitbart*, 720 F.3d 932, 934 (D.C. Cir. 2013) (citation omitted).

Arpaio should not be allowed to evade the substantive consequences of the Act simply by filing a SLAPP suit in this Court rather than in D.C. Superior Court.

## BACKGROUND AND PROCEDURAL HISTORY

For the relevant facts and procedural history of this matter, The Times respectfully directs the Court to its Rule 12(b)(6) Memo, which is incorporated herein by reference.

## ARGUMENT

The District of Columbia, like many other jurisdictions, passed an anti-SLAPP statute intended to curtail meritless lawsuits aimed at protected First Amendment activity, like this one. 58 D.C. Reg. 741 (Jan. 19, 2011).  Perhaps most importantly, the Act allows defendants in the District to recoup attorneys' fees incurred in defending against such lawsuits.  D.C. Code §§ 16-5502(a)-(b), 16-5504(a).  Arpaio's defamation and related claims arising from a column published on the editorial pages of *The New York Times* on August 29, 2018, under the headline, "Well, at Least Sheriff Joe Isn't Going to Congress," Complaint ("Compl."), Ex. 1, implicate this substantive protection of the Act.

### I.   THE D.C. ANTI-SLAPP ACT APPLIES IN FEDERAL DIVERSITY CASES

From the enactment of the D.C. Anti-SLAPP Act in 2011 through 2015, judges of this district court some half-dozen times found the Act to apply in cases in which federal jurisdiction arose out of diversity among the parties.[2]  That changed in 2015, when the D.C. Circuit, in *Abbas v. Foreign Policy Group, LLC*, applied the Supreme Court's conflict analysis in *Shady Grove*

---

[2] *See Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 36 n.10 (D.D.C. 2012) (Collyer, J.) ("It was certainly the intent of the D.C. Council and the effect of the law – dismissal on the merits – to have substantive consequences."), *aff'd*, 736 F.3d 528 (D.C. Cir. 2013); *see also Forras v. Rauf*, 39 F. Supp. 3d 45, 51-52 (D.D.C. 2014); *Abbas v. Foreign Policy Grp., LLC* ("*Abbas I*"), 975 F. Supp. 2d 1, 9-11 (D.D.C. 2013); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 254 (D.D.C. 2013); *Diwan v. EMP Glob. LLC*, 841 F. Supp. 2d 246, 247 n.1 (D.D.C. 2012).

*Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to find the Act inapplicable in federal court.  783 F.3d 1328, 1333-37 (D.C. Cir. 2015) ("*Abbas II*").

The D.C. Circuit, in a decision by then-Circuit Judge Kavanaugh, focused on a key aspect of the Act that it viewed as presenting a "direct collision" between the federal rule and state statute—the Act's "likelihood of success standard."  783 F.3d at 1334-35.  The *Abbas* court read this standard as "different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56," thus creating an "additional hurdle" for litigants, in conflict with the Federal Rules.  *Id.* at 1335.[3]  The *Abbas* court, however, offered an express caveat to this holding.  It recognized that "the D.C. Court of Appeals had never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by Federal Rules 12 and 56."  *Id*.  The court noted that, were the Act's dismissal standard aligned with the Federal Rules, the outcome of its preemption analysis might be different:

> An interesting issue could arise if a State anti-SLAPP act did in fact exactly mirror Federal Rules 12 and 56.  Would it still be preempted under *Shady Grove*?  As defendants' argument suggests, the answer to that question could matter for attorney's fees and the like.  But we need not address that hypothetical here because, as we have explained, the D.C. Anti-SLAPP Act's dismissal standard does not exactly mirror Federal Rules 12 and 56.

*Id.* at 1335 n.3.

---

[3] Other Circuits have reached different conclusions on this issue when similarly considering state anti-SLAPP statutes in diversity cases in light of *Shady Grove*.  *Compare Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (considering California's anti-SLAPP standard under *Shady Grove* and finding no direct collision because the statute "supplements rather than conflicts" with the Federal Rules by establishing a "separate and additional theory upon which certain kinds of suits may be disposed before trial"), & *Godin v. Schencks*, 629 F.3d 79, 88-89 (1st Cir. 2010) (same, analyzing Maine statute), *with Carbone v. CNN, Inc.*, --- F.3d ---, 2018 WL 6565917, at *2-8 (11th Cir. Dec. 13, 2018) (finding direct collision between Georgia's anti-SLAPP statute and the Federal Rules).

3

The D.C. Court of Appeals subsequently answered that specific question as a matter *of District law*.  In *Competitive Enterprise Institute v. Mann*, the District's high court expressly interpreted the Act's "likelihood of success [on the merits] standard to simply mirror" the standards under the Federal Rules.  150 A.3d 1213, 1238 n.32 (D.C. 2016) ("*Abbas* recognized that at the time, this court 'has never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by' Federal Rule 56.  We do so now." (citation omitted)).  Thus, the Times respectfully submits that, in light of *Mann's* post-*Abbas* clarification of D.C. law, there is no direct conflict between the Act and the Federal Rules—the very situation that *Abbas* acknowledged.  As interpreted by the *Mann* court, the Act and the Federal Rules can now "exist side by side, . . . each controlling its own intended sphere of coverage without conflict."  *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1108 (D.C. Cir. 2012) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)).  Because the *Mann* interpretation of District law post-dates *Abbas*, district courts properly follow *Mann*.  *See, e.g.*, *Easaw v. Newport*, 253 F. Supp. 3d 22, 34 (D.D.C. 2017) ("[W]hen the D.C. COA has spoken clearly and unmistakably to the current state of D.C. law, its views must govern.").

The result is important because, although *Mann* aligns the standards for motions under the Act with the Federal Rules, the Act still has an important substantive remedy independent of the Rules:  It allows for an award of attorneys' fees and costs to the prevailing party.  D.C. Code § 16-5504.  As decisions in this district have recognized, "such statutory provisions are substantive in nature."  *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 85 n.4 (D.D.C. 2012).  Indeed, the D.C. Circuit, like many courts, has long recognized the underlying interest protected by the Act, given that "[c]ostly and time-consuming defamation litigation can threaten those essential freedoms"—"freedom of speech and freedom of the press."  *Kahl v. Bureau of Nat'l Affairs, Inc.*,

856 F.3d 106, 109 (D.C. Cir.), *cert. denied*, 138 S. Ct. 366 (2017); *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) ("The threat of being put to the defense of a lawsuit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself."). As such, this is not a situation like *Shady Grove*, in which an *Erie* decision affects no substantive rights, because in that case the putative class plaintiffs could still assert individual claims in state court even if the Rules foreclosed a class action. 559 U.S. at 431-32 (Stevens, J., concurring). Here, in contrast, unless the Act applies in diversity actions, defamation defendants facing meritless claims can avail themselves of the Act's speech-protective fee shifting provisions *only* in D.C. Superior Court, and they lose that substantive protection entirely if a plaintiff simply opts to bring his claim in federal court.

The Times thus respectfully submits that *Abbas* no longer forecloses application of the D.C. Anti-SLAPP Act in diversity cases. At the very least, the issue is ripe for review by the D.C. Circuit in light of the clarification provided by *Mann*.

## II.     THIS CASE SHOULD BE DISMISSED UNDER THE D.C. ANTI-SLAPP ACT

Arpaio's claims based on the column implicate the substantive protections of the Act. Because his claims fail on their merits as a matter of law, the Times should be awarded its reasonable attorneys' fees and costs.

### A.     Plaintiff's Complaint Triggers The Anti-SLAPP Act's Protections

The Act's protections are triggered where tort claims "arise[] from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b). As relevant here, the Act defines this advocacy to include "[a]ny written or oral statement" made "[i]n a place open to the public or a public forum in connection with an issue of public interest," and an "'[i]ssue of public interest' means an issue related to health or safety; environmental, economic, or community well-being; the District government; a public figure; or a good, product, or service

in the market place." *Id.* § 16-5501(1)(A)(ii) & (3). The "right of advocacy on issues of public interest" also includes "[a]ny other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest." *Id.* § 16-5501(1)(B). Both conditions are satisfied here.

The column published by *The New York Times* about a U.S. Senate primary election—and the losing candidate's history of brutal policing tactics—clearly represents a "written . . . statement" made "[i]n a place open to the public or a public forum" in connection with an issue related to "health or safety" or "economic, or community well-being." *Id.* § 16-5501(1)(A)(ii) & (3). The column was "[i]n a place open to the public or a public forum" as it was published online, where "anyone with a working internet connection or access to one can view it." *Abbas*, 975 F. Supp. 2d at 11 (citing *Boley*, 950 F. Supp. 2d at 255 & *Farah*, 863 F. Supp. 2d at 38); *accord Mann*, 150 A.3d at 1227 (the Act applies "because the lawsuit is based on articles that appeared on [defendants'] websites that concern the debate over . . . global warming"). The column on its face concerns an issue related to "community well-being": The national candidacy and influence of a man who had become an "embodiment of fearmongering ethnonationalism." *See* Compl., Ex. 1 at 1. In addition, it self-evidently concerns a "public figure"—the erstwhile elected Sheriff and once (and according to his Complaint, future) Senate candidate, Joe Arpaio. The column thus plainly satisfies the requirements for protection under D.C. Code § 16-5501(1)(A)(ii). Although this is sufficient, it is also the case that the column, which advocates a view that the "bare-knuckle approach to law enforcement" publicly championed by Arpaio throughout his career should be rejected, qualifies for protection under the Act as "expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest." D.C. Code § 16-5501(1)(B).

### B. Arpaio's Claims Are Not Likely To Succeed On The Merits

Because The Times has shown that Plaintiffs' claims "arise[] from an act in furtherance of the right of advocacy on issues of public interest," its special motion to dismiss should be granted unless Arpaio can demonstrate that his claims are "likely to succeed on the merits." D.C. Code § 16-5502(b).  Under *Mann*, this means that Arpaio must demonstrate that his claims can survive a dispositive motion under the Federal Rules.  150 A.3d at 1238.  As established in the Rule 12(b)(6) Memo, which is incorporated here by reference, Arpaio fails to state a viable claim as a matter of law because (1) he must plausibly plead facts establishing both "actual malice" fault and the falsity of defamatory statements of fact, and, in light of the extensive public record (and judicial rulings) concerning his conduct, he cannot do so, Rule 12(b)(6) Memo at 29-38; and (2) any remaining statements in the column are non-actionable statements of opinion, *id*. at 40-43.

### CONCLUSION

For the foregoing reasons, The Times respectfully requests that its special motion to dismiss be granted, that the Complaint be dismissed with prejudice, and that The Times be awarded its reasonable attorneys' fees and costs.

Dated:  January 4, 2019

Respectfully submitted,

**BALLARD SPAHR LLP**

 */s/ Jay Ward Brown*
Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Dana R. Green (D.C. Bar No. 1005174)
1909 K. Street, NW, 12th Floor
Washington, D.C. 20006-1157
Telephone:  (202) 661-2200

Fax:  (202) 661-2299  
brownjay@ballardspahr.com  
bowmanchad@ballardspahr.com  
greendana@ballardspahr.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
: 
: 
**JOSEPH MICHAEL ARPAIO** :
: 
**Plaintiff,** :
: Case No. No. 1:18-cv-02387-APM
**v.** :
: 
: 
**MICHELLE COTTLE, et al.** :
: 
**Defendants**. :
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PROPOSED ORDER

Upon consideration of the Special Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act of Defendants Michelle Cottle and The New York Times Company, incorrectly sued as "New York Times," Plaintiff's opposition thereto, and any reply briefing and oral argument thereon, and for good cause shown, it is hereby **ORDERED** that the Special Motion to Dismiss is granted and that judgment be entered for Defendants in the above-captioned action.

**SO ORDERED** this ___ day of _____, 2018.

_____
UNITED STATES DISTRICT JUDGE