## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH MICHAEL ARPAIO,**

                        Plaintiff,

v.

**MICHELLE COTTLE, et al.**

                        Defendants.

**Case No. 18-cv-02387-(APM)**

**ORAL ARGUMENT REQUESTED**

## PLAINTIFF SHERIFF ARPAIO'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Dated:** February 8, 2019

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
FREEDOM WATCH, INC.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Ste 345
Washington, D.C. 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

*Counsel for Plaintiff*

I.  INTRODUCTION………………………………………………………………….  1

II.  THE ARTICLE AT ISSUE………………………………………………………..  2

III.  THE LAW AND ANALYSIS………………………………………………………...  5

    A.  Legal Standard of Review……………………………………………………  5

    B.  Plaintiff's Defamation Claims Easily Survive a 12(b)(6) Motion to Dismiss Because Plaintiff Sufficiently Pled Actual Malice and Defendants Published Their False and Defamatory Statements with a Reckless Disregard for Their Truth……………………………………………………………………………  6

        1.  *Defamation*………………………………………………………………  6

            a.  Element 1 – The False and Defamatory Statements……………  7

            b.  Element 2 – Defendants Published Without Privilege…………  9

            c.  Element 3 – Defendants Acted with Actual Malice and a Reckless Disregard for the Truth……………………………………………  10

            d.  Element 4 – The Statements are Actionable as a Matter of Law.  16

        2.  *Defamation Per Se*………………………………………………………  16

        3.  *Defamation by Implication* ……………………………………………..  18

    C.  Plaintiff's Independent Causes of Action Survive Because the Defamation Claims Survive……………………………………………………………………  20

        1.  *Tortious Interference with Prospective Business Relations*…………..  20

        2.  *False Light*………………………………………………………………  21

    D.  Defendants' False and Defamatory Statements are not Non-Actionable Opinion Because the Connotations Defendants Publish are Sufficiently Factual to be Susceptible of Being Proved True or False……………………  23

IV.  CONCLUSION………………………………………………………………………  26

## CASES

*Afro-American Publ'g Co. v. Jaffe*,
    366 F.2d 649 (D.C. Cir. 1966)………………………………………………  17

*Armstrong v. Simon & Schuster*,
    649 N.E. 825, 829 (N.Y. 1995)……………………………………………  19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)……………………………………………………… 5, 6, 12

*Ball v. E.W. Scripps Co.*,
    801 S.W.2d 684 (Ky. 1990)………………………………………………  13

*Bean v. Gutierrez*,
    980 A.2d 1090 (D.C. 2009)………………………………………………  21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………………   5

*Benz v. Wash. Newspaper Publ'g Co., LLC*,
    2006 U.S. Dist. LEXIS 71827 (D.D.C. Sept. 29, 2006)…………………… 21, 22

*Bernabei & Wachtel*, PLLC,
    116 A.3d 1262 (D.C. 2015)………………………………………………  21

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002)……………………………………………  20

*Cottell v. Smith*,
    299 Ga. 517 (2016)………………………………………………………  18

*Edmond v. Am. Ed. Servs.*,
    823 F. Supp. 2d 28 (D.D.C. 2011)………………………………………  17

*Erickson v. Pardus*,
    551 U.S. 89 (2007)………………………………………………………   5

*Fiber Sys. In'l v. Roehrs*,
    470 F.3d 1150 (5th Cir. 2006)……………………………………………  11

*Flamm v. American Ass'n of University Women*,
    201 F.3d 144 (2nd Cir. 2000)……………………………………………  24

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002)……………………………………………  10

*Galloway v. FCC,*
    778 F.2d 16 (D.C. Cir. 1985)……………………………………………………………… 25

*Guilford Transp. Indus., Inc. v. Wilner,*
    760 A.2d 580 (D.C. 2000)…………………………………………………………….. 7, 9, 26

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
    491 U.S. 657 (1989)…………………………………………………………………… 12, 13, 14

*Herbert v. Lando,*
    441 U.S. 153 (1979)…………………………………………………………………… 13, 14, 15, 2

*Howard Univ. v. Best,*
    484 A.2d 958 (D.C. 1984)……………………………………………………………… 8

*Hutchinson v. Proxmire,*
    443 U.S. 111 (1979)…………………………………………………………………… 10, 26

*Johnson v. Johnson Publishing Co.,*
    271 A.2d 696, 698 (D.C. 1970)………………………………………………………… 16

*Kimmel v. Gallaudet Univ.,*
    639 F. Supp. 2d 34 (D.D.C. 2009)……………………………………………………… 20

*Levy v. American Mut. Ins. Co.,*
    196 A.2d 475 (D.C. 1964)……………………………………………………………… 14

*Martin v. Ezeagu,*
    816 F. Supp. 20 (D.D.C. 1993)………………………………………………………… 4

*Matrixx Initiatives, Inc. v. Siracusano,*
    131 S. Ct. 1309 (2011)………………………………………………………………... 5

*Mazur v. Szporer,*
    2004 U.S. Dist. LEXIS 13176 (D.D.C. June 1, 2004)…………………………………… 16

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990)……………………………………………………………… *passim*

*Moldea v. New York Times Co.,*
    15 F.3d 1137 (D.C. Cir. 1994)………………………………………………………… 16, 17, 22

*Moss v. Stockard,*
    580 A.2d 1011 (D.C. 1990)…………………………………………………………….. 15

*Mountain States Legal Foundation v. Bush*,
    306 F.3d 1132 (D.C. Cir. 2002)……………………………………………… 4

*Nanko Shipping, USA v. Alcoa, Inc.*,
    107 F. Supp. 3d 174 (D.D.C. 2015)…………………………………………… 20

*Newton v. National Broadcasting Co.*,
    930 F.2d 662 (9th Cir. 1990)…………………………………………………… 14

*New York Times v. Sullivan*,
    376 U.S. 254 (1964)……………………………………………… 10, 11, 26

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984)………………………………………………. 4

*Oraraugo v. Watts*,
    884 A.2d 63 (D.C. 2005)……………………………………………………... 7

*Paul v. Davis*,
    424 U.S. 693 (1976) …………………………………………………….. 16

*Paulin v. The George Washington School of Medicine and Health Sciences*,
    878 F. Supp. 2d 241 (D.D.C. 2012) ………………………………………….. 6

*Poindexter v. Wachovia Mortgage Corp.*,
    F. Supp. 2d, 2012 WL 1071248 (D.D.C. 2012)………………………………… 5

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966)……………………………………………………… 2, 6

*Saenz v. Playboy Enterprises, Inc.*,
    841 F.2d 1309 (7th Cir. 1988)…………………………………………….... 25

*Sigal Constr. Corp. v. Stanbury*,
    586 A.2d 1204 (D.C. 1991)…………………………………………………... 24

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)………………………………………………………….. 11

*Stewart v. Nat'l Educ. Ass'n*,
    471 F.3d 169 (D.C. Cir. 2006)…………………………………………………. 5

*Tavaoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987)…………………………………………….... 4, 9

*Wallace v. Skadden, Arps, Slate, Meagher and Flom*,

715 A.2d 873 (D.C. 1988)……………………………………………………… 7, 8

*Weyrich v. New Republic, Inc.*,
235 F.3d 617 (D.C. Cir. 2001)……………………………………………..14, 17

*White v. Fraternal Order of Police*,
909 F.2d 512 (D.C. Cir. 1990)………………………………………………..*passim*

## **RULES**

Fed. R. Civ. P. 8(a)(2)……………………………………………………… 12

Fed. R. Civ. P. 9(b)………………………………………………………… 12

Fed. R. Civ. P. 12(b)(6)…………………………………………………… 5, 6

Fed. R. Civ. P. 56 ………………………………………………………….. 15

## **OTHER AUTHORITIES**

David A. Elder, Defamation: A Lawyer's Guide § 7:3 (1993)……………………………… 11

David A. Elder, Neville L. Johnson, and Brian A. Rishwain, *Establishing Constitutional Malice for Defamation and Privacy/False Light Claims When Hidden Cameras and Deception Are Used by the Newsgatherer*, 22 Loy. L.A. Ent. L. Rev. 327, 383 (2002)…………………………… 13

R. Sack, Libel, Slander, and Related Problems 52……………………………………… 4

Restatement (Second) of Torts § 580A, cmt. D (1977)……………………………………… 11

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 116 (Supp. 1988)…………….. 18

## **OTHER SOURCES**

Fortin, Jacey, *A Guide to Joe Arpaio, the Longtime Sheriff Who Escaped Strife, The New York Times,* (Aug. 27, 2017), available at: https://www.nytimes.com/2017/08/27/us/joe-arpaio-sheriff-pardon.html…………………………………………………………………… 12

The Editorial Board, *Voters Drive Sheriff Arpaio Out of Town*, *The New York Times*, (Nov. 11, 2016), available at: https://www.nytimes.com/2016/11/11/opinion/voters-drive-sheriff-arpaio-out-of-town.html?module=inline…………………………………………………….. 12

Lacey, Marc, *Arpaio Is Criticized Over Handling of Sex-Crimes Cases*, *The New York Times*, (Dec. 9, 2011), available at: https://www.nytimes.com/2011/12/10/us/sheriff-joe-arpaio-criticized-over-handling-of-sex-crimes-cases.html?module=inline…………………………… 12

Pena-Perez, Richard, *Former Arizona Sheriff Joe Arpaio Is Convicted of Criminal Contempt*, *The New York Times*, (July 31, 2017), available at: https://www.nytimes.com/2017/07/31/us/sheriff-joe-arpaio-convicted-arizona.html?module=inline……………………………………………………………………. 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH MICHAEL ARPAIO,

                 Plaintiff,

v.

MICHELLE COTTLE, et al.

                 Defendants.

**Case No. 18-cv-02387-(APM)**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF SHERIFF ARPAIO'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS[1]**

Plaintiff Joseph Michael Arpaio ("Plaintiff Sheriff Arpaio") respectfully submits this memorandum of law in opposition to Defendant Michelle Cottle's ("Cottle") and Defendant The New York Times' (hereinafter referred to as "Defendants") motion to dismiss the Complaint and hereby submits as follows:

## I. INTRODUCTION

Defendants' motion to dismiss is wholly without merit and should be denied. Plaintiff Sheriff Arpaio's Complaint sets forth multiple specific allegations that more than satisfy each of the elements of Plaintiff's claims for defamation, defamation per se, defamation by implication, tortious interference with prospective business relations, and false light. This opposition summarizes the fatal deficiencies in Defendants' arguments and explains those deficiencies by providing the Court with concrete examples from Plaintiff Sheriff Arpaio's well-pled Complaint.

---

[1] Notwithstanding the lack of merit of Defendants' motion to dismiss, they have filed a wholly frivolous Anti-SLAPP motion, for the reasons set forth in Plaintiff's opposition.

As Justice Stewart said over five decades ago, "[t]he right of a man [or woman] to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being – a concept at the root of any decent system of ordered liberty." *Rosenblatt v. Baer*, 383 U.S. 75, 92-93 (1966). Defendants' defamatory article with its multitude of falsehoods and false innuendos has indisputably provoked vicious and venomous condemnations of Plaintiff Sheriff Arpaio from ordinary reasonable people who simply read the defamatory article published by Defendants Cottle and New York Times and conclude from the article *on its face* that Plaintiff Sheriff Arpaio is a killer, a disgrace to law enforcement, a crook, a criminal, and worse. There is no doubt that Plaintiff Sheriff Arpaio has been degraded and disgraced. There is no doubt that he has been held up to public hatred, contempt, scorn, and ridicule. There is no doubt that he has been injured in his trade, profession, and occupation. The reputation of one of the great law enforcement officers, who sought to protect America's borders and Arizona citizens from harms committed by illegal aliens and other lawbreakers, whose leadership is *the stuff of legend* – to use Defendants' phrase – is falsely attacked. Plaintiff Sheriff Arpaio has turned to this honorable Court for a remedy; a remedy to which he is, in justice and under the law, entitled.

## II.    THE ARTICLE AT ISSUE

On August 29, 2018, Defendants Cottle and New York Times published an article titled, "*Well, at Least Sheriff Joe Isn't Going to Congress – Arpaio's Loss in Arizona's Senate Republican Primary is a Fitting End to the Public Life of a Truly Sadistic Man.*" Defendants strategically and disingenuously title the defamatory article as an opinion piece even though it contains several false, defamatory factual assertions concerning Plaintiff Sheriff Arpaio. These false factual assertions are carefully and maliciously calculated to damage and injure Plaintiff

2

Sheriff Arpaio both in the law enforcement community and the community of Republican and conservative establishment donors in order to prevent him from successfully running for the U.S. Senate in 2020 or for another public office as a Republican. Compl. at ¶ 14.

The false and defamatory factual representations and statements contained in the defamatory article include but are not limited to:

> **His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.**

> **The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.**

> **At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.**

Compl. at ¶ 15 (emphasis added).

The defamatory article further publicly places Plaintiff Sheriff Arpaio in a false light that is offensive to any reasonable person using false statements, representations, and imputations.

> **Joe Arpaio, the former sheriff of Maricopa County, Ariz., who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-deserved criminal record if President Trump, a staunch admirer of Mr. Arpaio's bare-knuckle approach to law enforcement, had not granted him a pardon.**

> **Cast aside and left to wallow in the knowledge that his moment has passed, he has a fitting end to the public life of a true American villain.**

3

**It was no secret that Mr. Arpaio's methods often crossed the line into the not-so- legal.**

**For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again.**

Compl. at ¶ 17 (emphasis added). The false, misleading and fraudulent statements in the defamatory article, including outright lies in the form of false or misleading facts or false and misleading mixed opinion and fact, have severely harmed Plaintiff Sheriff Arpaio's reputation and caused him financial and other damage. Defendants severely harmed Plaintiff Sheriff Arpaio's distinguished 55-year law enforcement and political career by publishing false and defamatory statements concerning his trade. The false and fraudulent facts in the defamatory article severely harmed Plaintiff Sheriff Arpaio's chances and prospects of election to the U.S. Senate in 2020 and his reputation in the law enforcement community has also been harmed, including the Drug Enforcement Administration ("DEA"), where he served for 26 years as an agent and top official. Compl. at ¶¶ 20-21.

The defamatory statements that Plaintiff Sheriff Arpaio sufficiently alleged in his Complaint must be taken as a whole, in conjunction with the entire article. ". . . The cardinal principle of defamation law [is] that 'words must be read in the context of the entire communication *as a whole.*'" *Tavoulareas v. Piro*, 817 F.2d 762, 818 (D.C. Cir. 1987) (emphasis added) (quoting R. Sack, Libel, Slander, and Related Problems 52 (1980)); *see also Ollman v. Evans*, 750 F.2d 970, n. 88 (D.C. Cir. 1984) (". . . the publication must be taken as a whole, and in the sense in which it would be understood by the read to whom it was addressed.").

## III.    THE LAW AND ANALYSIS

### A.    Legal Standard of Review.

This Court must deny Defendants motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mountain States Legal Foundation v. Bush*, 306 F.3d 1132, 1134 (D.C. Cir. 2002); *see also Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (a motion to dismiss is appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.). To determine the legal sufficiency of Plaintiff's Complaint, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A court may not dismiss a complaint merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Federal Rule of Civil Procedure 12(b)(6) also requires "construing the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

A motion to dismiss must be denied where, as here, allegations of the complaint contain sufficient facts which, if true, "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In turn, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is plausibility, not probability. *Id*. at 678 (citing *Twombly*, 550 U.S. at 556)[2]; *see Matrixx Initiatives, Inc. v.*

---

[2] Plaintiff is confident that ultimately the evidence will demonstrate that all his claims are more than probable. At this early pleading stage, however, it is not necessary to demonstrate probability, only *plausibility*.

*Siracusano*, 131 S. Ct. 1309, 1322 n.12 & 1323 (2011). In considering the factual allegations, a court must view the complaint as a whole, assume the truth of its allegations, and afford the plaintiff the benefit of reasonable inferences from the allegations. *Matrixx*, 131 S. Ct. at 1322-23; *see also Poindexter v. Wachovia Mortgage Corp.*, F. Supp. 2d, 2012 WL 1071248, *1 (D.D.C. 2012) (Wilkins, J.) ("the court liberally construes the complaint in favor of the non-moving party and grants all reasonable inferences to the nonmovant that can be derived from the facts alleged.").

Indeed, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity." *Iqbal*, 556 U.S. at 664. As this Court stated in *Paulin v. The George Washington School of Medicine and Health Sciences*, 878 F. Supp. 2d 241 (D.D.C. 2012), "[i]t is essential to remember that, for the purposes of ruling on a motion to dismiss, the factual allegations of the complaint *must* be presumed to be true and liberally construed in favor of the plaintiff." *Id.* at 246. (emphasis in original). The findings and conclusions in the Complaint must be accepted as true – not utterly disregarded as Defendants seek to have this Court do. Under these standards, Defendants' motion to dismiss must be denied as a matter of law.

**B.      Plaintiff's Defamation Claims Easily Survive a 12(b)(6) Motion to Dismiss Because Plaintiff Sufficiently Pled Actual Malice and Defendants Published Their False and Defamatory Statements with a Reckless Disregard for Their Truth.**

"Since the latter half of the 16th century, the common law has afforded a cause of action for damage to a person's reputation by the publication of false and defamatory statements." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 11 (1990). Our body of law recognizes the "important social values which underlie the law of defamation" and recognizes that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Id.* at 22 (quoting *Rosenblatt*, 383 U.S. at 86)). Here, Plaintiff Sheriff Arpaio, who has been publicly

6

maligned by Defendants' defamatory conduct, seeks redress for the attacks upon his character and reputation and livelihood.

### 1.    *Defamation*

To succeed on a claim for defamation, a plaintiff need only prove: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement [met the requisite standard]; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused plaintiff special harm." *Oraraugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005).

### a.    Element 1 – The False and Defamatory Statements.

A statement is defamatory "if it tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000). A publication conveys a defamatory meaning if it "tends to lower the plaintiff in the estimation of a substantial, respectable group, though they are a minority of the total community or [of the] plaintiff's associates." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).

In *Wallace v. Skadden, Arps, Slate, Meagher and Flom*, 715 A.2d 873 (D.C. 1988), a former associate of a law firm brought suit against her former employer for defamation. *Id*. at 875. The plaintiff there alleged that her character and professional qualifications had been defamed by the defendants in a number of performance evaluations and other communications. *Id*. She alleged that defendants falsely and maliciously stated that:

> the plaintiff 'played hookie' and had poor and unreliable work habits; that she frequently failed to meet deadlines; that she produced work of 'inferior quality,' some of which was 'not worth reading'; that she was unwilling to work on

7

> weekends . . . and used her children as an excuse for poor performance; and that
> her billings were low, compared with those of other associates; . . .

*Id*. at 876. The complaint also alleged that the defendants further defamed her by stating that one client was so displeased with the poor quality of the plaintiff's work that a representative of the client had asked the plaintiff's superiors not to assign the plaintiff to any more of that client's matters. *Id*. at 877. Finally, the complaint alleged that her former colleagues were directed to respond to any inquires by potential employers as to the plaintiff's qualifications by providing only the dates of the plaintiff's employment; according to plaintiff, an employer reference providing only this information "is a well known code in the legal community for 'do not hire.'" *Id*.

The trial judge mistakenly dismissed the complaint for failure to state a claim, holding that the communications in question were not defamatory. *Id*. 875. But, the District of Columbia Court of Appeals disagreed and reversed, holding that these statements are, "at least, capable of a defamatory meaning." *Id*. at 878. "An allegation that an attorney is often out of the office during normal working hours, although perhaps inconclusive on its face, could reasonably be construed, in context, as a reflection on her professional performance." *Id*. The court continued, "[a] false representation that a client is sufficiently dissatisfied with an attorney's work to seek the attorney's removal from the client's matters is patently defamatory," *id*., and that "the defendants' alleged coup-de-grace – a directive to all attorneys to convey to prospective employers the coded message that the plaintiff should not be hired – tends to injure the plaintiff's reputation in her profession." *Id*.

Here, the false and defamatory article has precisely ascribed to Plaintiff conduct and characteristics that would tend to injure him "in [his] trade, profession or community standing," *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984), or "adversely affect [his] fitness for the

proper conduct of [his] lawful business." *Wallace*, 715 A.2d at 877. The defamatory publication contains several factual falsities about Plaintiff that are not only "capable of a defamatory meaning" but also, as in *Wallace*, "patently defamatory." *Id*. The false representation and imputation that Plaintiff Sheriff Arpaio's "abuses ranged from the humiliating to the lethal" (lethal meaning deadly) is patently defamatory. It leaves the reader with the false impression that Plaintiff Sheriff Arpaio callously killed people because, among other reasons, his "reign of terror was medieval in its brutality[,]" he "terroriz[ed] immigrants[s]," and "beat[]" inmates who were left "battered on the floor to die" Compl. at ¶ 15.

A jury could find that the statements Defendants maliciously published accused Plaintiff of murder, among other crimes, and thus conveyed a defamatory meaning, because "to constitute a libel it is enough that the defamatory utterance imputes any misconduct whatever in the conduct of the [plaintiff's] calling." *Guilford*, 750 A.2d at 600; *see also Tavaoulareas v. Piro*, 817 F.2d 762, 780 (D.C. Cir. 1987) (holding that statement that "a father set up his son in business" accuses father of nepotism and is defamatory because it "might tend to injure [him] in his trade, profession or community standing, or lower him in the estimation of the community"). The entire defamatory article concerns "plaintiff's calling" as a Sheriff and conveys not only "misconduct" but also criminal activity amounting to felonies. *Guilford*, 750 A.2d at 600.

b.     <u>Element 2 – Defendants Published Without Privilege.</u>

Defendants published their false and defamatory article without privilege. Despite citing law in their motion to dismiss concerning this particular element of defamation, *see* Defendants' MTD at p. 28 [Dkt. #8], Defendants fail to raise it substantively in their motion to dismiss and do not address the issue at all. Therefore, this honorable Court must rest on Plaintiff's sufficient

allegations in the Complaint wherein he explicitly stated, "Defendants' statements and the publishing/broadcasting thereof were made without any privilege." Compl. at ¶ 29.

c.     <u>Element 3 – Defendants Acted with Actual Malice and a Reckless Disregard for the Truth.</u>

Defendants disingenuously argue that Plaintiff "has not even attempted to allege facts that . . . could support a finding that The Times deliberately published a falsehood about him in the column." Defs. MTD at p. 30. Even a cursory review of the Complaint proves this statement false. Moreover, whether Defendants published the false and defamatory statements with actual knowledge of their falsity, or with reckless disregard of their truth, is a question of fact that cannot properly be resolved on a motion to dismiss. *See e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("actual malice" calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition"); *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (observing that "malice" cannot properly be determined on a motion to dismiss).

First, Plaintiff expressly alleges that "Defendants made and published false and defamatory statements concerning Plaintiff Sheriff Arpaio by calling, representing and publishing within this district, the nation and the world, *with malice*, that Plaintiff was directly responsible for numerous abused, assaulted, and battered inmates during his time as Sheriff of Maricopa County." Compl. at ¶ 24 (emphasis added). Similarly, Plaintiff alleges that Defendants published "with malice" that Plaintiff Arpaio was directly responsible for numerous inmate deaths during his time as Sheriff of Maricopa County. *Id*. at ¶ 23. Moreover, Plaintiff alleges that "these statements, *made with malice*, place Plaintiff in a false light that would be offensive to a reasonable person[,]" *id*. at ¶ 42 (emphasis added), and that "Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity." *Id*. at ¶ 28.

The Complaint also alleges a number of additional facts that support this allegation, including the fact that "Defendants are aware of these prospective business relationships and thus, given their malice and leftist enmity of Arpaio sought to destroy them with the publication of the subject defamatory article." *Id.* at ¶ 34.  Importantly, even though constitutional malice, proving that a statement was made with actual malice, has been defined as "with knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times v. Sullivan*, 376 U.S. 254 (1964), common law malice – ill will or one of its multiple variants – is a typical, relevant factor in support of a constitutional malice finding.

> [T]he decisions have generally held that almost any evidence of common law malice may be relevant and admissible evidence on the constitutional actual malice issue – anger; hostility; retaliation or threats to "*get*" plaintiff; *political partisanship*; participation in a scheme to injure plaintiff; personal ill will; coercive purposes or blackmailing attempts; motive to suppress information or intimidate an opponent critical of defendant; economic motivation; sensationalism or "*muckraking*;" publication with full cognizance of the harm to the plaintiff or heedless of the consequences; prior attempts at deliberate falsification or omissions; a preconceived plan to discredit plaintiff; a preconceived view or slant.

David A. Elder, Defamation: A Lawyer's Guide § 7:3, at 58-61 (1993) (emphasis added). As the Restatement (Second) of Torts has recognized, such factors "assist in drawing of an inference that the publisher knew that his statement was false or acted in reckless disregard of its falsity." Restatement (Second) of Torts § 580A, cmt. D (1977). "Recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Plaintiff Sheriff Arpaio plainly pled that Defendants had obvious reasons to doubt the veracity of their own statements. Plaintiff pled that Defendants "knew that [their] statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity." Compl. at ¶ 28. It comes as no surprise that Defendant New York Times has a history of publishing slanderous and injurious articles concerning Plaintiff

Sheriff Arpaio in an attempt to "muckrake" and "get" him because of his conservative political ideology. Defendant New York Times' political partisanship and liberal bias know no reasonable bounds;[3] *see Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1170 (5th Cir. 2006) (a "smear campaign involving a calculated and relentless attempt by [one party] that will go to any lengths to destroy [the other] was evidence of malice).

Second, and as important, "*[m]alice*, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). The standard for notice pleading under Federal Rule of Civil Procedure 8(a)(2) only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is not onerous, and the "heightened" pleading standard that Defendants would have this Court apply and which are applicable to some claims – such as fraud – is not applicable to defamation, defamation per se, defamation by implication, tortious interference with prospective business relations, or false light actions. A complaint need only contain sufficient factual allegations that, accepted as true, state a claim for relief that is "plausible," i.e., that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. The complaint need not include detailed factual allegations (although Plaintiff's Complaint does), as long as the alleged facts are

---

[3] As just a few examples: Fortin, Jacey, *A Guide to Joe Arpaio, the Longtime Sheriff Who Escaped Strife, The New York Times,* (Aug. 27, 2017), available at: https://www.nytimes.com/2017/08/27/us/joe-arpaio-sheriff-pardon.html; The Editorial Board, *Voters Drive Sheriff Arpaio Out of Town*, *The New York Times*, (Nov. 11, 2016), available at: https://www.nytimes.com/2016/11/11/opinion/voters-drive-sheriff-arpaio-out-of-town.html?module=inline; Lacey, Marc, *Arpaio Is Criticized Over Handling of Sex-Crimes Cases*, *The New York Times*, (Dec. 9, 2011), available at: https://www.nytimes.com/2011/12/10/us/sheriff-joe-arpaio-criticized-over-handling-of-sex-crimes-cases.html?module=inline; Pena-Perez, Richard, *Former Arizona Sheriff Joe Arpaio Is Convicted of Criminal Contempt*, *The New York Times*, (July 31, 2017), available at: https://www.nytimes.com/2017/07/31/us/sheriff-joe-arpaio-convicted-arizona.html?module=inline.

sufficient to state a claim to relief above the speculative level and give the defendant fair notice of what the claim is and the grounds upon which it rests.

In *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657 (1989), the U.S. Supreme Court expressly recognized that motive is "supportive," probative, and admissible evidence. *Id*. at 666-68. Actual malice occurs when a defendant "made the false publication with a 'high degree of awareness of . . . probable falsity,' or [] 'entertained serious doubts as to the truth of his publication.'" *Id*. at 667. Direct evidence of actual malice is not required. Rather, a "plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence[.]" *Id*. at 668. "[A]ll relevant circumstances surrounding the transaction may be shown . . . including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating . . . ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights . . ." *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (recognizing plaintiff will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself").

An example of the importance of evidence of ill will and animosity where the defendant's motive played a part is explained in *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684 (Ky. 1990). There, the defendant-newspaper's pattern of "bias [and] hostility toward the plaintiff attorney-prosecutor led the reporter to engage in a series of unethical practices reflecting a calculated attempt to build a case of prosecutorial incompetence. *Id*. at 686-88. When he found court records supporting his slant, the reporter noted "good cause" on them. *Id*. at 687. Among other derelictions, he interviewed only parties hostile to the plaintiff, deliberately avoiding those who could contradict the sources selected. *Id*. Undoubtedly and justifiably, "a preconceived story line and/or a preconceived slant with an intent to discredit, disparage, and inculpate a plaintiff is clear

evidence of constitutional malice."[4] Defendants published the false article to "discredit, disparage and inculpate" Plaintiff Sheriff Arpaio.

Moreover, when a plaintiff requests a jury trial, "[i]t is only when the court can say that the publication is not reasonably capable of *any* defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Levy v. American Mut. Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964) (emphasis added); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). "[I]f the language is capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two meaning would be attributed to it by persons of ordinary understanding under the circumstances." *Levy*, 196 A.2d at 476. "[A] jury must determine whether these impressions were actually conveyed, whether they were false, and whether the letters were motivated by actual malice." *White*, 909 F.2d at 525.

Indeed, recognizing the role of the jury in determining actual malice, the U.S. Court of Appeals for the Ninth Circuit held:

> We must attempt to discharge our constitutional responsibility to protect First Amendment values without unduly trenching on the fact- finding role of the jury and trial judge. We are mindful that in *New York Times*, *Bose*, and *Harte-Hands*, the Supreme Court was fashioning a process for reviewing the evidence which permits judicial protection of First Amendment values while still paying due deference to the fact-finding role of juries, and particularly the jury's opportunity to observe the demeanor of the witnesses.

*Newton v. National Broadcasting Co.*, 930 F.2d 662, 672 (9th Cir. 1990).

To these points, Plaintiff Sheriff Arpaio requires and is entitled to discovery concerning Defendants' knowledge, internal processes, and intentions, as these are exclusively within Defendants' control and material to Plaintiff's actual malice claim. In *Herbert v. Lando, et al.*,

---

[4] David A. Elder, Neville L. Johnson, and Brian A. Rishwain, *Establishing Constitutional Malice for Defamation and Privacy/False Light Claims When Hidden Cameras and Deception Are Used by the Newsgatherer*, 22 Loy. L.A. Ent. L. Rev. 327, 383 (2002).

the U.S. Supreme Court held that defamation plaintiffs burdened with proof of actual malice are entitled to discovery on a media defendant's editorial process as a constitutional matter, the very issue Defendants mistakenly argue has not been sufficiently pleaded. *Herbert*, 441 U.S. at 169, 175. Accordingly, dismissal prior to the completion of discovery on this point is premature and inconsistent with Federal Rule of Civil Procedure 56. As in *Herbert*, discovery concerning the internal mental processes of Defendants is warranted where "there is a specific claim of injury arising from a publication that is alleged to have been knowingly or recklessly false." *Herbert*, 441 U.S. at 174.

Drawing all reasonable inferences in favor of Plaintiff, the Complaint alleges sufficient facts to show that Defendants acted with both common law and actual malice. Defendants knew that their statements concerning Plaintiff were false and misleading. The very nature of Defendants' statements reveals that they must have known the statements were false when they published them. Defendants could not possibly have believed, or had any reason to believe that Plaintiff Sheriff Arpaio's "abuses" were "lethal" – that is, deadly. Defendants could not possibly have believed, or had any reason to believe that he "beat" inmates; that he was responsible for inmates who hanged themselves; that he was intentionally hiding information about other inmates' "unexplained" deaths; that he was a "terroriz[er]"; that he was a "true American villain"; that he performed his government-elected work "not-so-legal[ly]"; that he "was a disgrace to law enforcement"; and a "sadist" – that is, someone who derives pleasure, especially sexual gratification, from inflicting pain or humiliation on others. As such, the Complaint is consistent with Rule 8(a)(2) and therefore Defendants' motion to dismiss must be denied.

        d.      <u>Element 4 – The Statements are Actionable as a Matter of Law.</u>

Statements actionable as a matter of law, or per se defamatory statements, do not require proof of pecuniary injury, because existence of injury is presumed from the fact of publication. *Moss v. Stockard*, 580 A.2d 1011, 1033 n.40 (D.C. 1990).

        **2.**       ***Defamation Per Se***

A statement is considered defamatory per se when its defamatory character is apparent on its face, such that it imputes (1) the commission of a criminal offense; (2) infection with a loathsome communicable disease; (3) malfeasance or misfeasance in the discharge of duties of employment; or (4) unfitness for one's trade, profession or business. "In determining whether a statement is defamatory, the court must focus on the predictable effect the statement has on those who received the publication. An accusation of a criminal act is not a constitutionally protected statement of opinion." *Mazur v. Szporer*, 2004 U.S. Dist. LEXIS 13176, *9 (D.D.C. June 1, 2004). To accuse someone of a crime is libel per se. *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 698 (D.C. 1970); *see also Paul v. Davis*, 424 U.S. 693, 697 (1976) ("imputing criminal behavior to an individual is generally considered defamatory pe se, and actionable without proof of damages").

In *Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994), an author wrote a book about football and connections with organized crime. *Id*. at 1139. Defendant New York Times, also a defendant in *Moldea*, wrote a review of the book that was adverse to the author and the author filed suit alleging defamation. *Id*. The district court granted the newspaper's motion for summary judgment but on appeal, the court reversed, holding that the district court erred in ruling that the newspaper's review could not be defamatory as a matter of law. The court further found that: (1) the newspaper attacked the author's competence as a practitioner of his chosen

profession; (2) some of the challenged characterizations of the book were sufficiently factual that a jury could meaningfully determine their truth or falsity; and that (3) the accuracy of some of the statements in the review were open to dispute, such that the court could not find that as a matter of law a reasonable jury could find them false. *Id*. at 1140. The court found that an "allegation that a journalist and author is 'sloppy,' or that his book's portrayals of central events are incorrect or misleading' is capable of defamatory meaning in that it "would tend to injure [plaintiff] is his chosen profession, investigative journalism." *Id*. at 1143; *see also Edmond v. Am. Ed. Servs.*, 823 F. Supp. 2d 28, 35 (D.D.C. 2011) (finding that "[a] statement that a person does not pay his debts timely . . . is capable of a defamatory meaning"). The publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir. 1966). If a statement is reasonably capable of any defamatory meaning then the Court cannot rule, as a matter of law, that it was not defamatory. *Weyrich*, 235 F.3d at 627.

Here, just as in *Moldea*, Defendants not only "attacked" Plaintiff Sheriff Arpaio's competence as a practitioner of his chosen profession – an elected law enforcement officer – but also accused him of being a disgrace to law enforcement, a crook, a criminal, and worse. Moreover, the characterizations that Defendants published are sufficiently factual that a jury could determine their veracity. For example, it is either true or false that Plaintiff Arpaio is "a sadist." It is either true or false that his "abuses" were "lethal." It is either true or false that he is "a true American villain." It is either true or false that he was "a disgrace to law enforcement." It is either true or false that he "beat[]" inmates and left them "battered on the floor to die." These are only a few examples. Finally, the accuracy of Defendants' statements are open to dispute

such that a court cannot determine as a matter of law that a jury could not determine they are capable of a defamatory meaning.

### 3.       *Defamation by Implication*

A statement can be defamatory either because of what is expressly stated or because of an implied meaning. Defamation by implication "stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). Indeed, "District of Columbia law clearly contemplates the possibility that a defamatory inference may be derived from a factually accurate news report." *Id*. As a defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. "In doing so, the courts will not hunt for a strained construction in order to hold the words used as being defamatory." *Cottell v. Smith*, 299 Ga. 517, 523 (2016). "[A] defamatory implication [occurs when a defendant] juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts . . . even thought he particular facts are correct." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 116 (Supp. 1988).

In *Wasserman v. Times, Inc*., 424 F.2d 920 (D.C. Cir. 1970), for example, a plaintiff attorney, the subject of an allegedly defamatory article, brought an action for defamation against a magazine publisher. *Id*. at 921. The magazine published a photograph of seven men sitting at a table in a restaurant. One of the men was the plaintiff attorney. Accompanying the photograph was a brief article which referred to the occasion as a meeting even bigger than the famous Appalachian meeting of top Cosa Nostra hoodlums. *Id*. at 921. The district court mistakenly granted the publisher's motion for summary judgment. On appeal, however, the court found that the picture transformed innocuous professional conduct into conduct capable of being

18

defamatory by failing to disclose that the photo depicting the group of Mafia hoodlums included plaintiff's lawyers, who were acting in a purely representational capacity. *Id*. at 921-22.

Here, Defendants not only juxtaposed a series of facts that imply defamatory connotations between them, but they also omit facts. Implied defamation is based on "false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 649 N.E. 825, 829 (N.Y. 1995). When Defendants maliciously published, for example, that Plaintiff Sheriff Arpaio's "reign of terror was medieval in its brutality", they are implying that Plaintiff Sheriff Arpaio is a barbaric and inhumane murderer. The same is true when Defendants publish that inmates were "beaten, fed rancid food, denied medical care . . . [and] left battered on the floor." Comp.. at ¶ 15. Importantly, when Defendants falsely published that "nearly half of all inmate deaths on his watch here never explained" they are implying that Plaintiff Sheriff Arpaio not only killed or disposed of these inmates, but that he actively hid the fact that he committed these atrocities. Not only are these statements untrue, but also Defendants omit the facts that the people of Arizona elected and then reelected Plaintiff six (6) times, from 1992 to 2012. Defendants omit the fact that Plaintiff served his country honorably in the military has done more to crack down on illegal immigration than most anyone else in the country. Just like in *Wasserman*, when Defendants maliciously published these statements, they "transformed innocuous professional conduct into conduct capable of being defamatory" by accusing him of murder and essentially leaving the impression that Plaintiff Sheriff Arpaio walks around like a barbarian with a spiked club in his hand and indiscriminately bludgeons people who get in his way.

**C.     Plaintiff's Independent Causes of Action Survive Because the Defamation Claims Survive.**

*1.     Tortious Interference with Prospective Business Relations*

To establish a claim for tortious interference with prospective business relations under District of Columbia law, a plaintiff need only show: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resulting damage. *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 45 (D.D.C. 2009).

In *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34 (D.D.C. 2009), a dean and tenured professor sued her university for, *inter alia*, tortious interference with prospective business relations. *Id*. at 39. The court denied defendants' motion to dismiss because plaintiff sufficiently alleged that defendants' tortious interfered with her "valid business expectancy that she would be able to teach, and possible also serve as an administrator." She also contended that "agents and employees . . . interfered . . . by spreading false and defamatory lies" and that "[a]t least three potential sources of prospective employment have disappeared." *Id*. at 45. "Although Kimmel has not specifically named each alleged potential source of prospective employment or expressly asserted that [defendants] had knowledge of these expectancies, reasonable inferences can be drawn from Kimmel's factual assertions that [defendants] acted intentionally, and notice pleading does not require the complaint to specify the entities with whom she had an expectancy. *Id*.; *see also Browning v. Clinton*, 292 F.3d 235, 243 (D.C. Cir. 2002).

The facts here are even more persuasive than in *Kimmel*. Here, Plaintiff Sheriff Arpaio has alleged "affirmative, intentional acts of interference" with his contracts, *Nanko Shipping, USA v. Alcoa, Inc*., 107 F. Supp. 3d 174, 183 (D.D.C. 2015), and actually *named* those contracts.

Plaintiff alleged he "has a prospective business relationship with the Republican National Committee ("RNC") and its National Republican Senate Campaign Committee ("NRSC") which is headquartered in Washington, D.C., as well as their affiliated political action committees and entities and persons, including donors." Compl. at ¶ 32. Plaintiff continues, "The RNC . . . in conjunction with affiliated political action committees and entities and donors routinely provide funding to Republican political candidates for their campaigns . . . Defendants are aware of these prospective business relationships and thus, given their malice and leftist enmity of Arpaio sought to destroy them with the publication of the subject Defamatory Article." *Id*. at ¶¶ 33-34. Consequently, Plaintiff's tortious interference claim does not "rest[] on alleged inaction." *Id*. at 183. To the contrary, Plaintiff expressly alleged that "Defendants published the Defamatory Article to influence the RNC, the RNCC and affiliated political action committee and persons, and other donors, to withhold funding for Plaintiff Arpaio's 2020 political campaign by smearing and destroying his reputation and standing in his law enforcement, government and political community." *Id*. at ¶ 35. "Plaintiff Arpaio has been harmed as to his reputation as 'America's Toughest Sheriff' and financially by the publication of the Defamatory Article." *Id*. at ¶ 36.

Plaintiff Sheriff Arpaio sufficiently pled tortious interference with prospective business relations and Defendants' motion to dismiss must be denied.

### 2.    *False Light*

"A 'false light claim . . . requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'" *Doe v. Bernabei & Wachtel*, PLLC, 116 A.3d 1262, 1267 (D.C. 2015) (quoting *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009).

In *Benz v. Wash. Newspaper Publ'g Co., LLC*, 2006 U.S. Dist. LEXIS 71827 (D.D.C. Sept. 29, 2006), a producer from CNN claimed that defendant Washington Enquirer had stated that she had been "linked romantically with power players" and that she had "hooked up" with a "porn king." *Id*. at n. 5. The court found that plaintiff could proceed on her claim for false light because, *inter alia*, the published statements would be highly offensive to a reasonable person. *Id*. at 20. "Those articles, which implied that plaintiff, a professional, single woman in her 30s, used her job in the media to obtain romantic and sexual relationships with 'power players' for personal gain . . . would be highly offensive to a reasonable person." *Id*.

Similarly, in *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990), the defendant published articles that stated the true facts that the plaintiff, a police captain, tested positive for marijuana, and that a second drug test, which was "transported under irregular circumstances," produced negative results. *Id*. at 514. The plaintiff asserted that these statements falsely suggested that he used drugs. *Id*. at 516. The court held that if a communication, read in context, is "materially true" and "supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference," then it will rise to the level of actionable defamation. *Id*. at 520. Indeed, "[p]ublicity that is actionable in a false light claim generally will be actionable in defamation as well." *Moldea*, 15 F.3d at 1151.

Here, just as in *Benz* and *White*, Defendants falsely place Plaintiff Sheriff Arpaio in a false light that would be highly offensive to a reasonable person. Plaintiff did not run his jail as a "reign of terror that was medieval in its brutality." Compl. at ¶ 15. He did not "terroriz[e] immigrant neighborhoods." He did not abuse inmates so severely that they died. He did not beat inmates and let them die, battered, on a floor. He is not a "disgrace to law enforcement" or a "sadist masquerading as a public servant." *Id*. at ¶ 17. Virtually every line in Defendant's false,

misleading and defamatory article is susceptible of placing Plaintiff Sheriff Arpaio in a false light and they should be held accountable for their intentional and vicious attacks.

**D.    Defendants' False and Defamatory Statements are not Non-Actionable Opinion Because the Connotations Defendants Publish Are Sufficiently Factual to be Susceptible of Being Proved True or False.**

Defendants attempt to shield themselves from liability by claiming that their offending conduct constitutes protected opinion as a matter of law. Defs. MTD at p. 40. But, the U.S. Supreme Court rejected the doctrine of constitutionally protected opinion. *Milkovich v. Lorain Journal*, 497 U.S. 1 (1990) (holding that there exists not separate constitutional protection for statements of opinion).

In *Milkovich*, a local newspaper wrote a story about the actions of a local court in overturning athletic probation and ineligibility orders issued against a local high school wrestling team by the State's High School Athletic Association. Central to the story was testimony provided by a local high school wrestling coach regarding his team's involvement in an altercation at a wrestling coach regarding his team's involvement in an altercation at a wrestling match with another team and the subsequent decision by the Court to overturn the athletic association's probation and ineligibility orders on due process grounds. A sports columnist for the local newspaper published an article titled "Maple beat the law with the 'Big Lie.'" In the article the columnist stated:

> Anyone who attended the meet, whether he be from Maple Heights, Mentor, or impartial observer, knows in his heart that Milkovich and Scott lied at the hearing after each having given his solemn oath to tell the truth.
>
> But they got away with it.
>
> Is that the kind of lesson we want our young people learning from their high school administrators and coaches?
>
> I think not.

*Id*. at 5.

The U.S. Supreme Court concluded that the use of strongly worded opinion in the case before it, that is, that "Maple beat the law with the 'Big lie'" implied the existence of undisclosed defamatory facts that Milkovich had in fact committed perjury and that the "connotation" that Milkovich committed perjury is sufficiently factual to be susceptible of being proved true or false. The high Court reversed the lower court's finding that the opinion at issue did not constitute actionable defamation. Again, not all of the statements in an allegedly defamatory article need be false or defamatory, and the defamatory article need not expressly state the defamatory falsehood. "The dispositive question . . . becomes whether a reasonable factfinder could conclude that the statements in the . . . column ***imply an assertion*** that petition Milkovich perjured himself in a judicial proceeding." *Id*. at 19. (emphasis added). As the U.S. Supreme Court did, the Court here must "assess[] the 'clear impact,' 'general tenor,' and 'impression' created by the statements in the column." *Id*. at 21. Thus, even though the words of the news article in *Milkovich* did not explicitly state that the plaintiff perjured himself, the U.S. Supreme Court concluded that the average reader of the column "would be left with just such an impression." *Id*.

Following *Milkovich*, courts are to assess whether the defamatory description of the plaintiff that is at issue "reasonably implies" the alleged defamatory meaning and if so, whether the Defendants' accusation about plaintiff is capable of being proven false. *Flamm v. American Ass'n of University Women*, 201 F.3d 144, 151 (2nd Cir. 2000). Clearly, Defendants' defamatory statements accusing Sheriff Arpaio of being a sadist, a murderer, and worse constitute actionable defamation as Defendants' statements are expressions of defamatory facts and imply the existence of undisclosed defamatory facts which can be proven false. Indeed, even any statement

that a person or business is a criminal, even one expressed as an opinion, can amount to actionable defamation not protected by the First Amendment. *Sigal Constr. Corp. v. Stanbury*, 586 A.2d 1204, 1209 (D.C. 1991).

The impression that Defendants maintain is that Plaintiff is a cold-hearted, and brutal sadist who has no respect for human life. Such statements reasonably imply that Plaintiff murders inmates for sport. Defendants do not address the express and implied defamatory connotations which Plaintiff Sheriff Arpaio alleges were communicated by Defendants. Instead, Defendants attempt to assert, without basis, that blanket protection from liability is extended to opinion. No such protection exists nor could it exist after *Milkovich*. In this regard, Justice Rehnquist stated:

> **If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact**. Simply couching such statements in terms of opinion does not dispel these notions; and the statement, 'In my opinion Jones is a liar,' can cause as much damages to reputation as the statement, 'Jones is a liar.' As Judge Friendly aptly stated: '[It] would be destruction of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words ''I think.'

*Milkovich*, 497 U.S. at 18-19 (emphasis added). "Opinions are actionable if they imply a provably false fact or rely upon stated facts that are provably false." *Guilford*, 760 A.2d at 597. The Defendants' statements that it is their opinion that Plaintiff Sheriff Arpaio beats and murders inmates in his jail does not by any stretch of the imagination negate the impression that Defendants' statements are founded in fact. "Rigging or slanting the news is a most henious [sic] act against the public interest – indeed there is no act more harmful to the public's ability to handle its affairs." *Galloway v. FCC*, 778 F.2d 16, 19-20 (D.C. Cir. 1985); *see also Saenz v.*

*Playboy Enterprises, Inc.*, 841 F.2d 1309, 1317 (7th Cir. 1988) (the Court did not believe "that a publisher may, without impediment of law, trammel a public official by 'surreptitious and insidious implication' under the pretense of governmental critique").

Indeed, the First Amendment cannot be used as an "impenetrable barrier" to foreclose inquiry where there is a "specific claim of injury from a publication that is alleged to have been knowingly or recklessly false," *i.e.*, "actual malice." *Herbert*, 441 U.S. at 174. As in *Herbert*, Lando's claim of editorial privilege was rejected because it would impermissibly increase the burden on libel plaintiffs to demonstrate actual malice, and likely inhibit their ability to do so. *Id.* at 170 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964)) ("To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance, particularly when defendants themselves are prone to assert their good-faith belief in the truth of their publications, and libel plaintiffs are required to prove knowing or reckless falsehood with 'convincing clarity.'"). "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words "I think." *Milkovich*, 497 at 19. Likewise, "[t]hose charged with alleged defamation cannot, by their own conduct, create their won defense." *Hutchinson*, 443 U.S. at 111. Defendants cannot rely on their own defamatory article as evidence of its opinion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Sheriff Arpaio respectfully requests that this Court deny Defendants' motion to dismiss in its entirety. Plaintiff asks this honorable Court to step in and dispel the notion that these larger-than-life media conglomerates are untouchable; hold them accountable for their wrongdoings and send a message to other politically biased, multi-billion

dollar news organizations that maliciously defaming someone with adverse political views cannot and will not be tolerated.

Plaintiff respectfully requests oral argument.

**Dated**: February 8, 2019                     Respectfully submitted,

                                                 */s/ Larry Klayman*
                                                Larry Klayman, Esq.
                                                FREEDOM WATCH, INC.
                                                D.C. Bar No. 334581
                                                2020 Pennsylvania Ave. NW, Suite 345
                                                Washington, D.C. 20006
                                                Tel: (310) 595-0800
                                                Email: leklayman@gmail.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of February 2019, a copy of the foregoing opposition to Defendants' motion to dismiss was filed and served by electronic filing upon counsel listed on the Notice of Electronic Filing.


*/s/ Larry Klayman*
Larry Klayman