**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------- X
:
**JOSEPH MICHAEL ARPAIO** :
:
**Plaintiff,** :
: Case No. No. 1:18-cv-02387-APM
v. :
:
**MICHELLE COTTLE, et al.** :
:
**Defendants**. :
:
---------------------------------------- X

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Dana R. Green (D.C. Bar No. 1005174)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
greendana@ballardspahr.com

*Counsel for Defendants*

Date: February 27, 2019

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.   THE COMPLAINT FAILS TO PLEAD FACTS PLAUSIBLY
     ESTABLISHING CONSTITUTIONAL "ACTUAL MALICE" ....................................... 3

     A.   Arpaio Misstates The Applicable Legal Standard ................................................... 4

     B.   Arpaio Pleads No Facts That Plausibly Establish Actual Malice and
          Offers No Rebuttal To The Public Record That Demonstrates He
          Cannot Do So ............................................................................................................ 6

II.  ARPAIO ALSO HAS NO CLAIMS FOR STATEMENTS OF OPINION ....................... 9

CONCLUSION ....................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Agster v. Maricopa Cty. Sheriff's Office*,
    144 F. App'x 594 (9th Cir. 2005) ...................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................4, 5, 6, 7

*Atencio v. Arpaio*,
    161 F. Supp. 3d 789 (D. Ariz. 2015) ..............................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................4, 5

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)............................................................................................6

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)...........................................................................11

*Boley v. Atl. Monthly Grp.*,
    950 F. Supp. 2d 249 (D.D.C. 2013) ...............................................................................5

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984)........................................................................................................5

*Conley v. Gibson*,
    355 U.S. 41 (1957).........................................................................................................4

*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017) ......................................................................2, 3, 5

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013).................................................................................3, 10

*Flanders v. Maricopa Cty.*,
    54. P.3d 837 (Ariz. Ct. App. 2002) ................................................................................9

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) .......................................................................................5

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)......................................................................................................3, 4

*Graves v. Arpaio*,
  48 F. Supp. 3d 1318 (D. Ariz. 2014) .................................................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)..........................................................................................................4, 7

*Henry v. Collins*,
  380 U.S. 356 (1965)................................................................................................................8

*Henslee v. Union Planters Nat'l Bank & Trust Co.*,
  335 U.S. 595 (1949)..............................................................................................................10

*Herbert v. Lando*,
  441 U.S. 153 (1979)................................................................................................................6

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
  284 F. Supp. 2d 15 (D.D.C. 2003) .........................................................................................3

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) ...................................................................................5, 7

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988).................................................................................................................8

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979)................................................................................................................5

*Jankovic v. Int'l Crisis Grp.*,
  822 F.3d 576 (D.C. Cir. 2016)............................................................................................3, 7

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017)................................................................................................2

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) .................................................................................................6

*McFarlane v. Esquire Magazine*,
  74 F.3d 1296 (D.C. Cir. 1996) ...............................................................................................4

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016)............................................................................................5, 6

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)..................................................................................................................10

*Moldea v. New York Times*,
  15 F.3d 1137 (D.C .Cir. 1994) .............................................................................................10

*Moldea v. New York Times*,
    22 F.3d 310 (D.C. Cir. 1994) ..................................................................................10

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................................3

*Nurriddin v. Bolden*,
    818 F.3d 751 (D.C. Cir. 2016) ................................................................................7

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ................................................................................2

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) ........................................................................5

*Parsi v. Daioleslam*,
    890 F. Supp. 2d 77 (D.D.C. 2012) ..........................................................................7

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ..................................................................................6

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) .....................................................................................6

*Spiller v. District of Columbia*,
    302 F. Supp. 3d 240 (D.D.C. 2018) ....................................................................4, 5

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ................................................................................................8

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ............................................................................7, 8

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ..............................................................................11

*Wilson v. Maricopa Cty.*,
    463 F. Supp. 2d 987 (D. Ariz. 2006) ......................................................................9

The New York Times Company and its editorial board member Michelle Cottle (together, "The Times") respectfully submit this reply to Plaintiff Sheriff Arpaio's Opposition to Defendants' Motion to Dismiss, ECF Dkt. 11 ("Opposition" or "Opp.").

## **PRELIMINARY STATEMENT**

The most revealing thing about the Opposition is what is missing from it. The Opposition is devoid of citation to any pleaded factual allegations plausibly demonstrating that The Times *knew* any particular factual statement in the column was either false or likely false. This is a dispositive failing. Instead, Arpaio alternately contends that he need not plead facts supporting constitutional actual malice to state a claim, Opp. at 10-15, argues that, if he is required to so plead, the conclusory pleading of generalized "ill will" is sufficient, *id.* at 11-12, and, finally, maintains that the column's assertions were so inherently improbable that The Times "could not possibly have believed" them, *id.* at 15. Arpaio is wrong on all counts, and dismissal is warranted on this basis alone.

The Opposition also conspicuously ignores The Times's showing that any amendment would be futile because the challenged column summarized and commented upon an extensive public record about Arpaio's controversial law enforcement practices. Those practices have resulted in court decisions subject to judicial notice and tens of millions of dollars of government payments; Arpaio has largely admitted to and even bragged about such practices; and they have been a longstanding topic of national discussion. *See generally* Defs.' Mem. of Law in Supp. of Mot. to Dismiss, ECF Dkt. 8 ("Mem.") at 6-27. Arpaio ignores this entire record, as if doing so will somehow make it disappear. Also noticeably absent from Arpaio's Opposition is any explanation of how any specific statement in the column is allegedly factually inaccurate. Instead, Arpaio simply block-quotes passages that he deems actionable, Opp. at 3-4, and alleges unstated *implications* he now claims the column conveys, *e.g.*, *id.* at 2 (alleging readers would

1

...

conclude "Arpaio is a killer, a disgrace to law enforcement, a crook, a criminal, and worse"); *id.* at 17 (same); *id.* at 9 (alleging implication of murder), *id.* at 19 (same).

At bottom, this is a misguided defamation lawsuit by a public figure over a newspaper "op-ed" column summarizing well-known, pre-existing public controversies and offering views about them in the context of a U.S. Senate primary election. This type of publication lies at the core of protected political speech under the First Amendment. It therefore implicates the Court's constitutional responsibility to subject resulting claims to "close judicial scrutiny" to ensure that protected expression is not penalized, and robust debate not discouraged, by the burdens of litigation. *Ollman v. Evans*, 750 F.2d 970, 996-97 (D.C. Cir. 1984) (Bork, J., concurring); *see also Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) ("To preserve First Amendment freedoms and give reporters . . . the breathing room they need to pursue the truth, the Supreme Court has directed courts to weed out unmeritorious defamation suits."), *cert. denied*, 138 S. Ct. 366 (2017). Because Arpaio has not and cannot plausibly allege a required element of his claim—constitutional "actual malice"—for any factual statement in the column, this lawsuit should be dismissed.

## ARGUMENT

A significant portion of Arpaio's response to the motion by The Times is devoted to arguing that the column is harmful to his reputation, *see, e.g.*, Opp. at 7-10, 16-19, and that he adequately has alleged the common law elements of tortious interference and false light, *id*. at 20-23. In contrast to these strawman arguments, Arpaio devotes only six pages to the principal basis for dismissal argued by The Times—his failure to plead constitutional actual malice, *id.* at 10-15, a failure that forecloses *all* of his claims. *See, e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017) (dismissing claim where pleaded facts failed to establish actual

2

malice), *appeal dismissed*, 2017 WL 6553388 (D.C. Cir. 2017); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (same with respect to other causes of action); *see also* Mem. at 32-40.  It is telling that Arpaio fails to dispute—or even to address—this authority.  *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd sub nom. Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, United Methodist Church*, 98 F. App'x 8 (D.C. Cir. 2004).  At bottom, Arpaio offers no basis whatsoever to forestall the prompt dismissal of this lawsuit.

I.  **THE COMPLAINT FAILS TO PLEAD FACTS PLAUSIBLY ESTABLISHING CONSTITUTIONAL "ACTUAL MALICE"**

Arpaio does not dispute that he qualifies as a public official or public figure under the First Amendment, and therefore must adequately plead "actual malice," the applicable standard of fault, in order to state a claim arising from the column.  *See generally* Opp.

The actual malice standard in public-figure defamation lawsuits such as this one has been part of this nation's constitutional fabric for more than a half-century, since the Supreme Court recognized that unchecked litigation threatened the type of "uninhibited, robust and wide open" debate about public issues at the core of the First Amendment and necessary in a democracy.  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  Such political speech includes at times "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  *Id.*  To give protected speech essential "'breathing space'" from liability, *id.* at 271-72 (citation omitted), and in light of our "profound national commitment" to the debate of public issues, *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 584 (D.C. Cir. 2016) (quoting *Sullivan*, 376 U.S. at 270), *cert. denied*, 137 S. Ct. 1434 (2017), actionable defamation about public figures is

3

limited to "calculated falsehood[s]." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). In other words, "the defendant must have made the false publication with a 'high degree of awareness of . . . probable falsity.'" *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (quoting *Garrison*, 379 U.S. at 74). As the D.C. Circuit has noted, because this constitutional balance favors speech when public figures assert claims such as those at issue here, this actual malice standard is quite intentionally "a daunting one." *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996).

Contrary to Arpaio's argument in his Opposition, he has an obligation to adequately plead actual malice, not just an obligation ultimately to prove it—and his Complaint falls woefully short in this regard.

### A. Arpaio Misstates The Applicable Legal Standard

Arpaio first errs in urging that actual malice "cannot properly be resolved on a motion to dismiss." Opp. at 10. Following the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), every civil litigant has an obligation to allege in a complaint facts sufficient to render a claim "plausible on its face" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. Thus, Arpaio misstates the applicable law when he cites the defunct "no set of facts" standard, Opp. at 5, first articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court expressly abrogated that standard in *Twombly*. *See* 550 U.S. at 561-63 ("[T]his famous observation has earned its retirement."); *see also, e.g.*, *Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 256 (D.D.C. 2018) (rejecting "no set of facts" standard because "[s]ince *Twombly* and *Iqbal* were decided, …

4

the standard for evaluating a motion to dismiss for failure to state a claim has shifted significantly").[1]

Arpaio seeks to evade this obligation by arguing that, because Rule 9(b) of the Federal Rules of Civil Procedure provides that "*[m]alice*, intent, knowledge, and other conditions of a person's mind may be alleged generally," Opp. at 12 (citation omitted), no "heightened" pleading rule applies to actual malice, *id.* This, again, is a misstatement of applicable law. The Supreme Court itself in *Iqbal* directed that the plausibility demanded by Rule 8 *includes* the pleading of "malice, intent, knowledge, and other conditions of a person's mind" under Rule 9(b). 556 U.S. at 686-87 (alteration omitted). As the Supreme Court explained, "Rule 9 merely excuses a party from pleading [malice] under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* As such, in order to state a claim that survives a motion to dismiss, a public figure defamation plaintiff must allege *facts* plausibly establishing each element of his cause of action, including actual malice. *See, e.g.*, *Deripaska*, 282 F. Supp. 3d at 144 (dismissing claim where pleaded facts failed to establish "that [defendant] acted with actual malice"); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016) (same), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 262-63 (D.D.C. 2013) (same); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (same). Every Circuit to consider actual malice pleading

---

[1] For this reason, Arpaio's reliance on cases decided before *Iqbal* and *Twombly*, such as *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) (cited at Opp. at 10), is misplaced. Moreover, the 1979 Supreme Court footnote relied upon by Arpaio, Opp. at 10 (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979)), did not bear the weight placed on it by Arpaio in his Opposition—even before *Iqbal* and *Twombly*. The Supreme Court subsequently rejected that footnote, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 n.7 (1986), and made clear that a court's obligation to evaluate actual malice is "a constitutional responsibility *that cannot be delegated to the trier of fact*." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984) (emphasis added).

after *Iqbal* has reached the same conclusion. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016); *Biro v. Conde Nast,* 807 F.3d 541, 544-46 (2d Cir. 2015); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).

As such, it is not "premature" for a court to dismiss a claim without discovery into actual malice, as Arpaio argues. Opp. at 15. Under the modern pleading standard, plaintiffs may not "unlock the doors of discovery… armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.[2] They must *first* allege *facts* sufficient to state the elements of a plausible claim. The Complaint here does not.

### B. Arpaio Pleads No Facts That Plausibly Establish Actual Malice and Offers No Rebuttal To The Public Record That Demonstrates He Cannot Do So

Arpaio dubs it "disingenuous[]" for The Times to have pointed out that, in his Complaint, he "has not even attempted to allege facts that … could support a finding that The Times deliberately published a falsehood about him in the column." Opp. at 10 (quoting Mem. at 30). This grievance apparently rests on a misunderstanding of the term "facts": Arpaio emphasizes in his Opposition that the Complaint *does* repeatedly *allege* "actual malice." *Id.* (citing Compl. ¶¶ 23, 24, 28, 42). But these talismanic recitations are precisely the kind of "unadorned" and "[t]hreadbare recitals of the elements of a cause of action" that, as a matter of law, fail to satisfy

---

[2] The Opposition cites *Herbert v. Lando*, 441 U.S. 153, 169 (1979), for the proposition that defamation plaintiffs are "entitled" to discovery into actual malice. Opp. at 14-15. However, that case involved a claimed editorial privilege during discovery. 441 U.S. at 157-58. Moreover, the Supreme Court in *Iqbal* expressly *declined* to create any entitlement to discovery based on conclusory pleadings of "[m]alice, intent, knowledge, and other conditions of a person's mind," 556 U.S. at 686-87 (citation omitted).

Rule 8.  *Iqbal*, 556 U.S. at 678-79; *see also Hourani*, 164 F. Supp. 3d at 143-44 (rejecting "conclusory allegations" of actual malice); *see also* Mem. at 29-31.  Bald assertions that the column was published "with malice" or with "knowledge of falsity," absent supporting factual allegations plausibly establishing that conclusion, are insufficient.  They are merely "legal conclusions couched as factual allegations," *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 2159 (2017), and need not be credited.

Alternately, Arpaio urges that actual malice should be assumed because "Defendant New York Times' political partisanship and liberal bias knows no reasonable bounds," and therefore knowledge of falsity or probable falsity exists based on this "ill will."  Opp. at 11-12.  The Complaint offers no facts to support this assertion, which itself is fatal.  *Iqbal*, 556 U.S. at 686-87.  But the Opposition also errs on the law in urging that *Connaughton* "expressly recognized that motive is 'supportive,' probative, and admissible evidence."  Opp. at 13.  The Supreme Court did allow that "it cannot be said that evidence concerning motive … *never* bears any relation to the actual malice inquiry."  *Harte Hanks Commc'ns*, 491 U.S. at 668 (emphasis added).  However, the Court also made clear that "it is worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term."  *Id.* at 666.  As this Court has noted, "[i]f ideological opposition alone showed actual malice, valuable investigative journalism would be threatened by defamation laws."  *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 91 (D.D.C. 2012).  The Court of Appeals has recognized that, while a speaker "may have adopted an adversarial stance" toward the subject of a challenged statement, that "attitude is not 'antithetical to the truthful presentation of facts.'"  *Jankovic*, 822 F.3d at 597 (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987)); *see also id.* at 596 (noting that "motive-based evidence" is not "probative of actual malice" unless "the

publisher's alleged motive shows an intent to inflict harm through falsehood, a willingness to publish *unsupported allegations*, or a desire to publish *with little or no regard for the report's accuracy*") (internal marks, alterations, and citations omitted).

It is subjective knowledge of falsity that serves as proof of constitutional actual malice, not common-law, "ill will" malice. *Henry v. Collins*, 380 U.S. 356, 357-58 (1965) (per curiam) (reversing defamation judgment where jury instruction could be read merely to require intent to inflict harm rather than intent to do so through false statements); *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988) ("[O]ne of the prerogatives of American citizenship is the right to criticize public men and measures. Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to vehement, caustic, and sometimes unpleasantly sharp attacks.") (internal marks and citation omitted). In any event, "defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement." *Tavoulareas*, 817 F.2d at 794. Arpaio, with the broad-brush allegations he has adopted in his Complaint here, makes no actual attempt to do so.

Finally, Arpaio urges that The Times "must have known" that the column was false. Opp. at 15. Although clear and convincing evidence that a "publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation" may constitute actual malice, *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968), Arpaio once again offers only this bald conclusion: He fails to point to any specific factual allegation in his Complaint that would explain why The Times "must have known" that specific statements in the column were false.

For example, Arpaio argues without explanation that The Times must have known it was false to assert that abuses in his jails were "lethal." Opp. at 15. But it is a matter of judicially noticeable public record that numerous inmates died in custody after being shocked by police with Taser guns, restrained, stripped, subjected to "dog piles," and/or beaten. *See, e.g.*, *Agster v. Maricopa Cty. Sheriff's Office*, 144 F. App'x 594, 596 (9th Cir. 2005); *Atencio v. Arpaio*, 161 F. Supp. 3d 789, 794-96 (D. Ariz. 2015); *see generally* Mem. at 15-19. Courts have also determined that Arpaio failed to show that detainees with serious health needs received appropriate medical care, *Graves v. Arpaio*, 48 F. Supp. 3d 1318, 1341-42 (D. Ariz. 2014), and that he otherwise purposefully designed dangerous jail conditions, *Flanders v. Maricopa Cty.*, 54. P.3d 837, 846 (Ariz. Ct. App. 2002) ("The jury could properly determine that the Sheriff was callously indifferent to … the exposure of Tent City inmates to serious injury.); *Wilson v. Maricopa Cty.*, 463 F. Supp. 2d 987, 994 (D. Ariz. 2006) ("Plaintiffs have presented sufficient evidence for a reasonable jury to find deliberate indifference on the part of Sheriff Arpaio" to dangerous conditions); *see also* Mem. at 8-15. In this context, bald allegations that The Times "must have known" his jails were actually safe cannot satisfy Arpaio's burden to plead facts that plausibly establish The Times possessed such knowledge but proceeded nonetheless to publish false statements to the contrary in the column.

The Complaint is properly dismissed in its entirety, with prejudice, on this ground alone. See Mem. at 32-38.

## II. ARPAIO ALSO HAS NO CLAIMS FOR STATEMENTS OF OPINION

Arpaio closes his Opposition by urging that the column's views are not protected opinion, including because, without citing to any specific statements, "[t]he impression that Defendants maintain is that Plaintiff is a cold-hearted, and brutal sadist who has no respect for human life,"

9

and that such alleged "statements" "reasonably imply that Plaintiff murders inmates for sport." Opp. at 25. This cursory line of argument fails for several reasons.

*First*, with regard to the statements actually contained in the column, Arpaio does not focus on any particular language in the column but, rather, argues that challenged statements as a whole are actionable because they "imply the existence of undisclosed defamatory facts which can be proven false," *id.* at 24—also without identifying those purportedly undisclosed facts. But this is not a situation like the one presented in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), where a potentially provable statement that someone committed perjury came in the context of implied undisclosed facts regarding the specific events surrounding the alleged perjury. Here, the column's characterizations of Arpaio's activities as "medieval," "brutal," and "bare-knuckle" and of Arpaio as "a disgrace," "a sadist" and "a true American villain," for example, are all either "so imprecise or subjective that [they are] not capable of being proved true or false," and therefore not actionable, *Farah*, 736 F.3d at 534-35, or the bases for these opinions are fully disclosed, *Moldea v. New York Times*, 22 F.3d 310, 317 (D.C. Cir. 1994) (where "the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation") (citation omitted).[3] Again, Arpaio simply ignores the extensive public record regarding his conduct that is discussed in the column. *See* Mem. at 42-43.

---

[3] Arpaio misleadingly cites to and relies upon an earlier opinion in that case as reversing a district court judgment for the defendant, Opp. at 16-17 (discussing *Moldea v. New York Times*, 15 F.3d 1137 (D.C .Cir. 1994))—an opinion that in fact was withdrawn. Upon reconsideration, the Court of Appeals reached the contrary result—affirming judgment for The Times. *Moldea*, 22 F.3d at 312 ("Wisdom too often never comes, and so one ought not to reject it merely because it comes late.") (quoting *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting)).

*Second*, unable to challenge the actual statements in the column, Arpaio essentially seeks to amend his Complaint through briefing to assert that supposed *implications* conveyed by the column are defamatory. Opp. at 18-19. His contention that the column implies that Arpaio "murders inmates for sport," for example, is nowhere to be found in the actual Complaint. More importantly, though, the implication is not reasonably conveyed by the column. Defamation by implication is "an area fraught with subtle complexities," and "courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *White v. Fraternal Order of Police*, 909 F.2d 512, 518-19 (D.C. Cir. 1990). Even where an alleged defamatory implication can reasonably be read from a challenged report—and a charge that Arpaio personally "murders inmates for sport" is not one that can reasonably be read from the column—the challenged publication must *also* reasonably show on its face that a defendant *intended* to convey the defamatory implication. *Id.* at 520 ("if a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established," absent language showing that "the defendant intends or endorses the defamatory inference"). Arpaio cannot point to anything in the column that would support such an intention here.

Moreover, just as stated conclusions drawn from disclosed facts are protected opinions, Mem. at 43, the *unstated* implications allegedly drawn from those facts are themselves non-actionable opinions. "If the Constitution protects an author's right to draw an explicit conclusion from fully disclosed facts, then an unstated inference that may arise in a reader's mind after reading such facts is also protected as an implicit expression of the author's opinion." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012).

*Third*, even if the Court were to credit Arpario's argument and deem every word and alleged implication in the column to be a defamatory statement of fact, Arpaio still must plead facts demonstrating that The Times made particular statements with knowledge of falsity or probable falsity—*i.e.*, actual malice.  For all the reasons outlined in Part I, he fails to do so and, in light of the overwhelming public record that gave The Times every reason to believe its statements were true, he cannot do so.

## CONCLUSION

For each and all the foregoing reasons, defendants respectfully request that this Court grant their motion and enter an order dismissing the Complaint, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:  February 27, 2019                                       Respectfully submitted,

**BALLARD SPAHR LLP**

 */s/ Jay Ward Brown*
Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Dana R. Green (D.C. Bar No. 1005174)
1909 K. Street, NW, 12th Floor
Washington, D.C. 20006-1157
Telephone:  (202) 661-2200
Fax:  (202) 661-2299
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
greendana@ballardspahr.com

*Attorneys for Defendants*