UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                 )
**JOSEPH MICHAEL ARPAIO,**        )
                                 )
     **Plaintiff,**               )
                                 )
       **v.**                   )     **Case No. 18-cv-02387 (APM)**
                                 )
**MICHELLE COTTLE, et al.,**        )
                                 )
     **Defendants.**            )
_____)

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

This case arises out of the publication of an article in The New York Times about Plaintiff Joseph Arpaio. Plaintiff filed this action against Defendants The New York Times Company and the article's author, Michelle Cottle, alleging that the article's false content caused him significant reputational and financial harm. Plaintiff advances claims for defamation, tortious interference with prospective business relations, and false light invasion of privacy. Defendants now move to dismiss the Complaint for failure to state a claim and, separately, for dismissal under the District of Columbia Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") Act.

For the reasons outlined below, the court grants Defendants' Motion to Dismiss for failure to state a claim and denies Defendants' Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act.

## II.     BACKGROUND

### A.     Factual Background

Plaintiff Joseph Arpaio served as Sheriff of Maricopa County, Arizona, for almost 25 years before running for Arizona's United States Senate seat in 2018. Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 9–10. Plaintiff was defeated in the Republican primary. On August 29, 2018, the day

after the primary election, Defendant The New York Times published an article written by Defendant Michelle Cottle titled, "Well, at least Sheriff Joe Isn't Going to Congress—Arpaio's Loss in Arizona's Senate Republican Primary is a Fitting End to the Public Life of a Truly Sadistic Man." Compl., Ex. 1 [hereinafter Article], at 1. Published in the Opinions section of the paper, the Article details Arpaio's actions, statements, and viewpoints during his 25-year tenure as Sheriff. *See id.*

The Article sarcastically begins by "mark[ing] the loss of a fierce and tireless public servant." *Id.* Cottle describes Plaintiff as someone "who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-deserved criminal record if President Trump . . . had not granted him a pardon." *Id.* She calls Plaintiff's election loss "a fitting end to the public life of a true American villain." *Id.*

The Article then follows with perhaps its most excoriating paragraph. Cottle says about Plaintiff:

> As "America's toughest sheriff," as Mr. Arpaio liked to call himself, prepares to ride off into the sunset, it bears recalling that he was so much more than a run-of-the-mill immigrant basher. His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this

> included pregnant women) and, in at least one case, left battered on
> the floor to die.

*Id.* at 1.

The Article then recounts features of Plaintiff's time as Sheriff of Maricopa County. It states that "many prisoners died in Mr. Arpaio's jail—at an alarming clip," noting that the "number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country." *Id.* at 2. It continues that his department "failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children." *Id.* Elsewhere, the Article says that, "[i]t was no secret that Mr. Arpaio's methods often crossed the line into the not-so-legal," and references Plaintiff's "practice of stopping and detaining people on no other grounds than suspecting them of being undocumented immigrants." *Id.* The Article adds that Plaintiff "was found guilty of criminal contempt of court for blatantly thumbing his nose at the law." *Id.*

The Article concludes by stating: "For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again." *Id.* at 3.

### B.     Procedural Background

Plaintiff filed this action against Defendants on October 16, 2018, alleging defamation per se, tortious interference with prospective business relations, and false light invasion of privacy. *See* Compl. In his Complaint, Plaintiff contends that the allegedly false and defamatory statements in the Article, which was "widely published in this judicial district, nationally and internationally," have harmed his reputation and political career and caused him financial damage. *Id.* ¶¶ 15, 18–21, 25. Plaintiff complains specifically that his reputation "with the Republican establishment,"

"chances and prospects of election to the U.S. Senate in 2020," and "reputation . . . in the law enforcement community" have all been harmed by the Article.  *Id.* ¶¶ 19–21.

On January 4, 2019, Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Defs.' Mot. to Dismiss, ECF No. 8 [hereinafter Defs.' Mot.].  Defendants argue that the Article "merely summarized" the abundantly available public record pertaining to Plaintiff's long tenure as Sheriff of Maricopa County, and that the Article's contents "constitute[] core political speech protected by the First Amendment."  Defs.' Mot. at 1.  Defendants further claim that because Plaintiff is a "public figure," he must meet a higher standard to make out a claim for defamation, which, they contend, he cannot do because he fails to allege facts that plausibly establish that the challenged statements were false or were published with the requisite intent of actual malice.  *Id.* at 29.

Defendants also separately filed a "Special Motion to Dismiss" pursuant to the District of Columbia Anti-SLAPP Act, D.C. Code § 16-5502(a).  *See* Defs.' Special Mot. to Dismiss Pursuant to the D.C. Anti-SLAPP Act, ECF No. 9 [hereinafter Defs.' Special Mot.], at 1.  Defendants contend that the Complaint must be dismissed because the Article constitutes "an act in furtherance of the right of advocacy on issues of public interest," and Plaintiff is unable to demonstrate that he is "likely to succeed on the merits" of his three claims.  *Id.* at 7 (quoting D.C. Code § 16-5502(a)).

## III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Id.* at 344–45 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When evaluating a motion under Rule 12(b)(6), the court must "accept the plaintiff's factual allegations as true," *Sickle*, 884 F.3d at 345, and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The court need not accept as true, however, "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining whether a complaint fails to state a claim under Rule 12(b)(6), a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006). "A district court may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims." *See Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017) (citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).

## IV.   DISCUSSION

### A.   Defamation

The court begins with Plaintiff's defamation claim. To state a claim for defamation under District of Columbia law, a plaintiff must allege sufficient facts to establish: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published

the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009). Of the four elements, Defendants argue primarily as to one: that Plaintiff fails to plead facts that support the requisite malicious intent. The court agrees.

The parties do not dispute that Plaintiff is a "public figure" for purposes of defamation law. *See generally* Pl.'s Opp'n to Defs.' Mot., ECF No. 11 [hereinafter Pl.'s Opp'n.]. As a consequence of this status, to make out a claim, Plaintiff must plausibly allege that Defendants "published the defamatory falsehood with 'actual malice,' that is, with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)). Stated another way, Plaintiff must plead facts that would render plausible that Defendants "in fact entertained serious doubts as to the truth of [their] publication." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968).

Plaintiff's Complaint comes nowhere close to pleading sufficient facts that plausibly establish "actual malice." Indeed, Plaintiff pleads no facts at all. Instead, throughout his Complaint, he does no more than recite the applicable legal standard. For example, he alleges that the Article's "factual assertions [were] carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community . . . as well as with Republican establishment and donors," Compl. ¶ 14; Defendants "made and published false and defamatory statements . . . with malice," *id.* ¶¶ 23–24; "Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded

their falsity," *id.* ¶ 28; and Defendants' statements, "made with malice, place Plaintiff in a false light that would be offensive to a reasonable person," *id.* ¶ 42.  This type of pleading, which offers no more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," does not satisfy Rule 8.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff attempts to defend his pleading of actual malice in three ways.  First, Plaintiff argues that the issue of malice "is a question of fact that cannot properly be resolved on a motion to dismiss."  *See* Pl.'s Opp'n at 10.  Not so.  The Supreme Court in *Iqbal* expressly held that the pleading of malice is subject to the "strictures of Rule 8."  556 U.S. at 686–87.  Thus, a plaintiff that "plead[s] the bare elements of his cause of action . . . [cannot] expect his complaint to survive a motion to dismiss."  *Id.*  Courts in this District have dismissed defamation claims for failing to plead sufficient facts supporting the element of actual malice.  *See, e.g., Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 149 (D.D.C. 2017); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 145 (D.D.C. 2016); *cf. Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 275 (D.D.C. 2017) (denying motion to dismiss where plaintiff's complaint did adequately allege facts sufficient to show actual malice).  And, as Defendants point out, circuit courts have done the same.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016) ("The complaint here does not present factual allegations sufficient to give rise" "to a reasonable inference that the defendants acted to intentionally avoid learning the truth."); *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (stating "that actual malice must be plausibly alleged" and finding that the plaintiff's "nonconclusory allegations . . . fall short of raising a plausible inference of actual malice"); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (holding

that allegation that statements "'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient"); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (confirming the trial court's determination that "none of [the plaintiff's] allegations—singly or together—plausibly suggest that, given the articles' reporting, the [defendant] either knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway"). Plaintiff's assertion that the court cannot dismiss for failure to sufficiently plead actual malice is therefore wrong.

Second, Plaintiff argues that actual malice can be inferred because "The New York Times' political partisanship and liberal bias know no reasonable bounds . . ." Pl.'s Opp'n at 12. But Plaintiff offers no facts in his Complaint to support this proposition. The three news articles that he cites in his opposition brief do not demonstrate the type of animus that Plaintiff claims. *See id.* at 15 n.3. In any event, even if The New York Times takes positions that could be perceived as unfavorably disposed towards Plaintiff, the D.C. Circuit has observed that "[i]t would be sadly ironic for judges in our adversarial system to conclude . . . that the mere taking of an adversarial stance is antithetical to the truthful presentation of facts." *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987). Plaintiff's unadorned claim of animus and bias cannot save his deficient pleading.

Finally, Plaintiff urges that the "very nature of Defendants' statements reveals that they must have known the statements were false when they published them." Pl.'s Opp'n at 15. But there is nothing about the Article's assertions of fact that makes them self-evidently false. To the contrary, as Defendants' briefing details with publicly reported news events and judicial decisions underpinning the Article's claims, of which the court takes judicial notice, *see* Defs.' Mot. at 6–27; Def.'s Reply Mem. of Law in Support of Def.'s Mot., ECF No. 14, at 9, there is ample reason

to reject Plaintiff's claim that "Defendants could not possibly have believed" the truthfulness of the Article's assertions of fact, Pl.'s Opp'n at 15.  Moreover, Plaintiff's objection to certain words that he considers incendiary—such as "sadist," "medieval," "bare-knuckled," "disgrace," and "true American villain"—is misplaced.  They are too imprecise or subjective to be verifiably false facts. *See, e.g., Moldea v. New York Times Co*., 22 F.3d 310, 314 (D.C. Cir. 1994) (finding use of the word "traitor" could not be the basis for a defamation action) (citation omitted).  That these words appeared in a column in the Opinions section of The New York Times only underscores that point. *See Ollman v. Evans*, 750 F.2d 970, 986 (D.C. Cir. 1984) (en banc) ("The reasonable reader who peruses [a] column on the editorial or Op–Ed page is fully aware that the statements found there are not 'hard' news like those printed on the front page or elsewhere in the news sections of the newspaper. Readers expect that columnists will make strong statements, sometimes phrased in a polemical manner that would hardly be considered balanced or fair elsewhere in the newspaper.") (citation omitted).  The Article's statements, on their face, therefore do not give rise to a plausible inference of actual malice.

In summary, Plaintiff's Complaint does not plead any facts to support the key element of actual malice.[1]

### B.     Tortious Interference with Prospective Business Relations

Plaintiff's second claim alleges that, by publishing the Article, Defendants tortiously interfered with prospective business relations, specifically with the Republican National Committee ("RNC") and its National Republican Senatorial Committee ("NRSC").  Because Plaintiff's defamation claim fails, this claim must fail as well.  *See Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (holding that because the plaintiffs' defamation claim failed,

---

[1] Contributing to the deficiency of the pleading is that Plaintiff offers no factual allegations to plausibly support the falsity of any of the Article's claimed defamatory statements.

so too did their other tort claims "based upon the same allegedly defamatory speech," including tortious interference).

Plaintiff's tortious interference claim would fail anyway, based on the sparse facts pleaded in the Complaint. For instance, a key element of a tortious interference claim is an "intentional interference inducing or causing a breach or termination of the relationship or expectancy." *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 11 (D.D.C. 2013). The Complaint does no more than parrot that legal requirement. It alleges that Defendants published the Article "to influence the RNC, the [NRSC] and affiliated political action committee and persons." Compl. ¶ 35. The Complaint contains no well-pleaded facts to support this element. Thus, the tortious interference claim must also be dismissed separate and apart from the deficient pleading of defamation. *See Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 177 (D.D.C. 2016) (finding pleadings insufficient where the plaintiffs' allegations tracked the elements of tortious interference but offered no additional facts to support the claim); *see also Xereas*, 933 F. Supp. 2d at 11 (holding that plaintiff had not properly pleaded a tortious interference claim because he provided only general references to potential opportunities).[2]

### C.      False Light

Plaintiff's final claim is that the Article portrayed him in a false light. Compl. ¶¶ 37–43. The court dismisses this claim as well. Although the tort of false light is distinct from the tort of defamation, like a defamation claim, a false light claim requires proof of actual malice when the plaintiff is a public figure. *See Zimmerman*, 246 F. Supp. 3d at 274 (D.D.C. 2017). Again, this standard requires "knowledge of or . . . reckless disregard as to the falsity of the publicized matter

---

[2] Plaintiff's heavy emphasis on *Kimmel v. Gallaudet University* is misplaced. *See* Pl.'s Opp'n at 20. There, unlike here, the plaintiff provided extensive factual assertions regarding the defendants' intent to remove her from the University. *See* 639 F. Supp. 2d 34, 38–40 (D.D.C. 2009).

and the false light in which the other would be placed." *Id.* (internal quotation marks and citation omitted).  Because Plaintiff has failed to plead actual malice, his false light claim must fail as well. *See Farah*, 736 F.3d at 540 (holding that because the plaintiffs' defamation claim failed, so too did its false light claim "based upon the same allegedly defamatory speech").

## V.     ANTI-SLAPP ACT MOTION TO DISMISS

The court denies Defendants' Motion to Dismiss based on the District of Columbia's Anti-SLAPP Act for the same reasons stated in this court's opinion in *Libre By Nexus v. BuzzFeed*, 311 F. Supp. 3d 149, 158–161 (D.D.C. 2018).

## VI.    DISMISSAL WITH PREJUDICE

Defendants seek dismissal of the Complaint with prejudice.  *See* Defs.' Mot. at 40.  In the face of this request, Plaintiff has not asked for leave to amend should the court grant Defendants' Motion.  *See generally* Pl.'s Opp'n.

Absent a motion from Plaintiff that seeks to amend, filed within 14 days and attaching a proposed amended complaint, the court will dismiss the Complaint with prejudice.  *See United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012); Local Civil Rule 15.1.

## VII.   CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 8, is granted and Defendants' Special Motion to Dismiss, ECF No. 9, is denied.

Dated:  August 9, 2019                              Amit P. Mehta
                                                    United States District Court Judge