IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO, an individual<br>Fountain Hills, AZ<br><br>               Plaintiff,<br>v.<br><br>MICHELLE COTTLE, an individual<br>c/o New York Times<br>1627 I Street NW, #700<br>Washington, DC 20006<br><br>and<br><br>THE NEW YORK TIMES,<br>1627 I Street NW, #700<br>Washington, DC 20006<br><br>               Defendants. | Case No.: 1:18-cv-02387 |

**NOTICE OF FILING RED-LINED AMENDED COMPLAINT WHICH COMPLIES WITH THE COURT'S ORIGINAL ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND THE LATEST ORDER OF AUGUST 26, 2019**

      Plaintiff hereby respectfully provides the Court Notice of Filing Red-Lined Amended Complaint Which Complies With the Court's Original Order Granting Defendants' Motion to Dismiss and the Latest Order of August 26, 2019, as Plaintiff and thus this Amended Complaint satisfies the Court's pleading requirements for this case to proceed accordingly. Please *see* Exhibit 1.

DATED: August 28, 2019                                     Respectfully submitted,

/s/ Larry Klayman
Larry Klayman, Esq.
Chairman and General Counsel
FREEDOM WATCH, INC.
2020 Pennsylvania Ave NW Suite 345
Washington, DC, 20006
Email: leklayman@gmail.com
Tel: 310-595-0800

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of August 2019, a copy of the foregoing was filed and served by electronic filing upon counsel listed on the Notice of Electronic Filing.

*/s/ Larry Klayman*
Larry Klayman

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO, an individual<br>Fountain Hills, AZ<br><br>     Plaintiff,<br>v.<br><br>MICHELLE COTTLE, an individual<br>c/o New York Times<br>1627 I Street NW, #700<br>Washington, DC 20006<br><br>and<br><br>THE NEW YORK TIMES,<br>1627 I Street NW, #700<br>Washington, DC 20006<br><br>     Defendants. | Case No.: **1:18-cv-02387**<br><br>**AMENDED** COMPLAINT |

**I. INTRODUCTION**

Plaintiff Sheriff Joseph Michael Arpaio ("Plaintiff Arpaio") brings this Amended Complaint for general defamation, defamation per se, defamation by implication, tortious interference with prospective business relations and false light against Michelle Cottle ("Cottle") and The New York Times ("NYT").

**II. JURISDICTION AND VENUE**

1. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

1

**III.     PARTIES**

3. Plaintiff Arpaio is an individual, natural person who is a citizen of the state of Arizona.

4. Defendant Cottle is an individual, natural person who is, on information and belief, a citizen of New York.

5. Defendant NYT is a nationwide news publication that published, as set forth herein, in this judicial district and with a major news bureau in this judicial district.

**IV.     STANDING**

6. Plaintiff Arpaio has standing to bring this action because he has been directly affected by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendants Cottle and NYT.

**V.     FACTS**

**Background Facts**

7. Plaintiff Arpaio is a long-time member of the law enforcement community who served as a Washington, D.C. and Las Vegas police officer following his honorable army discharge in 1953.

8. In November of 1957, Plaintiff Arpaio was appointed as a special agent with the Federal Bureau of Narcotics, which later became part of the Drug Enforcement Agency ("DEA"), headquartered in Washington, D.C.

9. Following his career with the DEA, Plaintiff Arpaio was elected as Sheriff of Maricopa County, Arizona in 1993. He held that position for almost 25 years [or] until January 1, 2017.

10. In January of 2018, Plaintiff Arpaio announced that he would run for U.S. Senate in Arizona. He was defeated in the August 28, 2018 Republican primary.

11. Plaintiff Arpaio intends to run for U.S. Senate again in 2020 for the seat vacated by the late senator John McCain, which is currently held by John Kyl, a placeholder until the 2020 special election can take place.

12. Defendants know of Plaintiff Arpaio's intention to run for the U.S. Senate in 2020 and knew of his intention to run at the time they published the defamatory article because it had been widely reported.

### Facts Pertaining to the Defamatory Publication

13. On August 29, 2018, Defendant NYT published an article titled "Well, at Least Sheriff Joe Isn't Going to Congress- Arpaio's Loss in Arizona's Senate Republican Primary is a Fitting End to the Public Life of a Truly Sadistic Man." (the "Defamatory Article") written by Defendant Michelle Cottle. Exhibit 1.

14. While the Defamatory Article is dishonestly titled as an opinion piece in order to attempt – albeit improperly and to no avail – to shield Defendants from liability, it contains several false, defamatory factual assertions concerning Plaintiff Arpaio, as well as actionable false and misleading intertwined publications of fact and alleged opinion.

15. These false and misleading factual assertions are carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community – which is centered in this judicial district – as well as with Republican establishment and donors, which is also centered in this judicial district, in order to prevent him from successfully running for U.S. Senate in 2020 or another public office as a Republican.

16. The false and defamatory factual representations and statements contained in the Defamatory Article include but are not limited to:

> His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.
>
> The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.
>
> At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.
>
> A copy of this Defamatory Article is attached as <u>Exhibit 1</u> and its contents are wholly incorporated herein by reference.

17. The Defamatory Article further <span style="color:red">publicly</span> places Plaintiff in a false light that is offensive to any reasonable person using false statements, representations, or imputations.

18. In addition to the statements set forth in Paragraph 15, the Defamatory Article includes, but is not limited to the following statements that portray Plaintiff Arpaio in a false light as well as the totality of the article taken as a whole:

> Joe Arpaio, the former sheriff of Maricopa County, Ariz., who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-deserved criminal record if President Trump, a staunch admirer of Mr. Arpaio's bare-knuckle approach to law enforcement, had not granted him a pardon.
>
> Cast aside and left to wallow in the knowledge that his moment has passed, he has a fitting end to the public life of a true American villain.

4

It was no secret that Mr. Arpaio's methods often crossed the line into the not-so-legal . . .

But the man [Plaintiff] has a long and storied history of mistreating people in unfortunate circumstances, so it seems only appropriate to return the favor.

For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again.

19. The false and fraudulent statements – including outright lies in the form of false or misleading facts or false and misleading statements mixing opinion and fact – in the Defamatory Article, which were widely published in this judicial district, nationally and internationally, [and] have severely harmed Plaintiff Arpaio's reputation and caused him financial and emotional damage. In sum, the specific false and misleading publications taken as a whole constitute defamation and/or, at a minimum, false light. *See White v. Fraternal Order of Police*, 909 F.2d 512, 526 (D.C. Cir. 1990).

20. Plaintiff Arpaio's distinguished 55-year law enforcement and political career has been severely harmed, as his reputation has been severely damaged among and with [the] Republican[s] [establishment], which is centered in the District of Columbia.

21. Plaintiff Arpaio's chances and prospects of election to the U.S. Senate in 2020 or another public office as a Republican have been severely harmed by the publication of false and fraudulent facts in the Defamatory Article. Defendants intended to interfere with Plaintiff Arpaio's chances and prospects. This also harms Plaintiff financially, as his chances of obtaining funding from Republican[s] [establishment] and donors for the 2020 election have been damaged by the publication of false and fraudulent representations in the Defamatory Article.

22. Plaintiff Arpaio's reputation has also been severely harmed in the law enforcement community, which is centered in this judicial district, and includes the DEA, where he served for 26 years as an agent and top official.

**Defendants Acted with Actual Malice**

23. Defendants, each of them, jointly and severally, and individually, acted with actual malice when they published the Defamatory Article because they knew or had reason to know that what they published was false or entertained serious doubts as to the truth of what they published.

24. Defendants are world-renowned, sophisticated journalists and publications and they know what is true or have reason to know what is false and misleading. The New York Times is the most sophisticated, most knowledgeable and most well funded publication. Defendants have a duty to publish accurately.

25. Defendants, each of them, jointly and severally, and individually, acted with actual malice because they intentionally avoided learning the truth and entertained serious doubts as to the truth of the publication.

26. Defendants, each of them, jointly and severally, and individually, acted with actual malice because they were subjectively aware that the Defamatory Article was fabricated in large part as set forth above as it was not corroborated by anyone. It was an intentional hit-piece to harm Plaintiff Arpaio because of his conservative stance on immigration and his support for President Trump.

27. Defendants, each of them, jointly and severally, and individually, acted with actual malice because what was published was inherently improbable such that only a reckless person would have put it in circulation.

28. Defendants, each of them, jointly and severally, and individually, purposefully avoided the truth because, among other reasons to be disclosed further in discovery, they were part of a leftist/Democrat and Republican establishment political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Arpaio's reputation and profession.

29. The Defamatory Article is not an account of two sides of an issue that raises questions in a reader's mind. It is evidence of not only a reckless disregard of the truth but also of common law malice (ill-will or dislike) because Defendants intentionally desired to "get" Plaintiff Arpaio and "muckrake" him.

30. Because the actual malice inquiry focuses on Defendant Cottle's and Defendant NYT's state of mind at the time of publication, Plaintiff Arpaio must rely on inferences from circumstantial evidence.

31. Circumstantial evidence here that is alleged to indicate actual malice includes but is not limited to: (1) the failure to investigate seriously false allegations; (2) the failure to seek comment from Plaintiff Arpaio or his lay or legal representatives; (3) the hostility, anger and retaliation to "get" Plaintiff Arpaio because of his conservative stance on immigration and outward support for President Trump; (4) Defendants' sensationalism and "muckraking"; (5) Defendants' preconceived plan to discredit and destroy Plaintiff Arpaio because of his conservative views before the 2020 election; (6) Defendants' preconceived view or slant; (7) other statements and publications about Plaintiff Arpaio; and (7) ill-will or hostility that Defendants' harbor for Plaintiff Arpaio.

32. Before any motion to dismiss can be granted, Plaintiff Arpaio is entitled to discovery on Defendants' inner workings in order to prove actual malice. *Herbert v. Lando*, 441

U.S. 153 (1979); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) (permitting discovery before ruling on actual malice).

33. Defendants published the Defamatory Article with actual malice by making a calculated decision not to verify their story because they knew or had reason to know it was false and misleading, but wanted to maliciously publish it anyway as it suited their left-leaning, open borders agenda.

34. Defendants published the Defamatory Article with actual malice by purposefully avoiding interviewing anyone who could contradict their story and that would have contradicted Defendants' preconceived storyline.

35. Defendants published the Defamatory Article with actual malice when they failed to request a comment from Plaintiff Arpaio or his lay or legal representatives even though they knew they would contradict many of the defamatory statements.

36. Defendants published the Defamatory Article with actual malice by making a calculated decision not to seek meaningful comment from anyone who could provide a different perspective of their story.

37. Defendants published the Defamatory Article with actual malice by failing to interview anyone concerning the article.

38. Defendants published the Defamatory Article with actual malice by repeatedly lying in the article in an effort to bolster the credibility of their own false story.

39. Defendants **admittedly** published the Defamatory Article with actual malice when they published that they wanted to "return the favor" to Plaintiff Arpaio. "Some might consider it ungenerous to celebrate Mr. Arpaio's electoral failure and continuing slide into

irrelevance. But the man has a long and storied history of mistreating people in unfortunate circumstances, so it seems only appropriate to return the favor." Exhibit 1.

40. At a minimum, Defendants had or should have had serious doubts as to the truth of the statements in the Defamatory Article and a high degree of awareness that they were probably false and therefore were required to investigate their veracity before publishing them. Defendants' failure to do so amounts to actual malice. Defendant Cottle and Defendant NYT purposefully avoided the truth, and purposefully avoided interviewing sources and following fundamental reporting practices intentionally in order to avoid the truth.

41. At the time of the Defamatory Article's publication, Defendants knew that their statements were false, or recklessly disregarded the truth.

## FIRST CAUSE OF ACTION
### *Defamation Per Se*

42. Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Amended Complaint with the same force and effect, as if fully set forth herein again at length.

43. Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Arpaio by knowingly, intentionally, willfully, and recklessly publishing statements about Plaintiff Arpaio which they knew or should have known to be false and misleading.

44. Defendants made and published false and defamatory statements concerning Plaintiff Arpaio by calling, representing and publishing within this district, the nation and the world, with actual malice, that Plaintiff Arpaio was directly responsible for numerous inmate deaths during his time as Sheriff of Maricopa County.

45. Defendants made and published false and defamatory statements concerning Plaintiff Arpaio by calling, representing and publishing within this district, the nation and the world, with actual malice, that Plaintiff Arpaio was directly responsible for numerous abused, assaulted, and battered inmates during his time as Sheriff of Maricopa County.

46. The statements at issue for this cause of action are contained in ¶ 15 of this Amended Complaint. They include, but are not limited to:

> His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.
>
> The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.
>
> At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.

47. These statements are defamatory per se because they falsely accuse Plaintiff Arpaio of committing a serious crime, which amounts to a crime of moral turpitude. As defamation per se, damage to Plaintiff Arpaio is presumed as a matter of law.

48. Defendants acted in concert and are therefore jointly and severely liable as joint tortfeasors. The statements were made by Defendant Cottle and then published and/or broadcast in this district, nationwide and throughout the world by Defendant NYT.

49. Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their truth. Defendants had reason to know that their publications were false and misleading.

50. Defendants' statements and the publishing/broadcasting thereof were made without any privilege.

51. Defendants' false words concerning Plaintiff Arpaio are so harmful that proof of their injurious effect is unnecessary.

52. As a direct and proximate result of Defendants and their agents' extreme, outrageous and malicious, defamatory conduct set forth above, Plaintiff Arpaio has been the subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.

53. These false impressions of Plaintiff Arpaio, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling.

### SECOND CAUSE OF ACTION
*General Defamation*

54. Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Amended Complaint, including with the same force and effect, as if fully set forth herein again at length.

55. Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Arpaio by knowingly, intentionally, willfully, and recklessly publishing statements about Plaintiff Arpaio which they knew or should have known to be false and misleading.

56. Defendants' defamatory publications are not privileged in any way or manner.

57.     To establish general defamation, a plaintiff need only show that a person or entity (1) published a false statement of fact; (2) about another person; (3) to a third party; and (4) the falsity of the statement caused injury to the other person.

58.     The false, defamatory and misleading publications about Plaintiff Arpaio were published and the falsity of the statements caused injury to him.

59.     Defendants knew or had reason to know that their publications were false and misleading.

60.     The false impression of Plaintiff Arpaio, which Defendants created, caused irreparable harm to him, his business and person and his calling.

### THIRD CAUSE OF ACTION
*Defamation by Implication*

61.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Amended Complaint, including with the same force and effect, as if fully set forth herein again at length.

62.     Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Arpaio by knowingly, intentionally, willfully, and recklessly publishing statements about Plaintiff Arpaio which they knew or should have known to be false and misleading.

63.     Defendants' defamatory publications are not privileged in any way or manner.

64.     Defamation by implication is a tort recognized in the District of Columbia. *See White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990). Defendants juxtaposed a series of facts so as to imply a defamatory connection between them.

65.     Defendants, together and both of them acting in concert, jointly and severally, and individually, published false statements about Plaintiff and these statements were defamatory in

that they created a false impression of Plaintiff.

66. Defendants, together and both of them acting in concert, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

67. A reasonable person would understand Defendants' statements to impart the false innuendo, which would be highly offensive to a reasonable person.

68. Defendants, both of them, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

69. The false impression of Plaintiff Arpaio, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling.

## [FOURTH] CAUSE OF ACTION
*Tortious Interference with Prospective Business Relations*

70. Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Amended Complaint, including with the same force and effect, as if fully set forth herein again at length.

71. Plaintiff Arpaio has a prospective business relationship with the Republican National Committee ("RNC"), and its National Republican Senate Campaign Committee ("NRSC") which is headquartered in Washington D.C., as well as their affiliated political action committees and entities and persons, including donors.

72. The RNC and its NRSC, in conjunction with affiliated political action committees and entities and donors, routinely provide funding to Republican political candidates for their campaigns. Plaintiff Arpaio ran for U.S. Senate in 2018 as a Republican, and intends to run again

for a U.S. Senate seat or other public office in 2020 as a Republican and ardent supporter of President [Donald J.] Trump and his administration.

73. Defendants are aware of these prospective business relationships and thus, given their malice and leftist enmity of Plaintiff Arpaio, intentionally, unlawfully and maliciously sought to destroy these relationships with the publication of the subject Defamatory Article and intentionally interfered with Plaintiff Arpaio's business relationships in order to harm him.

74. Defendants intentionally interfered with this expectancy by inducing or causing these prospective relationships to abandon Plaintiff Arpaio financially in his run for the U.S. Senate.

75. Defendants published the Defamatory Article to influence the RNC, the NRSC and affiliated political action committees, political donors, supporters and persons, and other donors, to cause the withholding of funding for Plaintiff Arpaio's 2020 political campaign by smearing and destroying his reputation and standing in his law enforcement, government and political community.

76. Defendants' egregious misconduct in publishing the Defamatory Article has and will continue to severely impede Plaintiff Arpaio's ability to capitalize on his U.S. Senate run and the goodwill associated with it, and to gainfully, efficiently and legitimately utilize the business concept of the RNC and the NRSC to generate business and economic advantage.

77. Plaintiff Arpaio has been harmed as to his reputation as "America's [Toughest] Sheriff" and harmed financially by the publication of the Defamatory Article.

## FIFTH CAUSE OF ACTION
*False Light*

78. Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Amended Complaint, including with the same force and effect, as if fully set forth herein again at length.

79. The Defamatory Article falsely and very publicly portrayed Plaintiff Arpaio in a negative, false light.

80. The Defamatory Article contained false statements, representations, or imputations understood to be of and concerning Plaintiff Arpaio.

81. The statements at issue are found in ¶¶ 15-17 of this Amended Complaint, as well as the totality of the Defamatory Article, which work together to defame and hold Plaintiff in a false light, and include but are not limited to:

> His 24-year reign of terror was medieval in its brutality. In addition to conducting racial profiling on a mass scale and terrorizing immigrant neighborhoods with gratuitous raids and traffic stops and detentions, he oversaw a jail where mistreatment of inmates was the stuff of legend. Abuses ranged from the humiliating to the lethal. He brought back chain gangs. He forced prisoners to wear pink underwear. He set up an outdoor "tent city," which he once referred to as a "concentration camp," to hold the overflow of prisoners. Inmates were beaten, fed rancid food, denied medical care (this included pregnant women) and, in at least one case, left battered on the floor to die.

> The number of inmates who hanged themselves in his facilities was far higher than in jails elsewhere in the country. More disturbing still, nearly half of all inmate deaths on his watch were never explained.

> At the same time, Mr. Arpaio's department could not be bothered to uphold the laws in which it had little interest. From 2005 through 2007, the sheriff and his deputies failed to properly investigate, or in some cases to investigate at all, more than 400 sex-crime cases, including those involving the rape of young children.

> Joe Arpaio, the former sheriff of Maricopa County, Ariz., who so robustly devoted himself to terrorizing immigrants that he was eventually convicted of contempt of court and would have lived out his twilight years with a well-

deserved criminal record if President Trump, a staunch admirer of Mr. Arpaio's bare-knuckle approach to law enforcement, had not granted him a pardon.

Cast aside and left to wallow in the knowledge that his moment has passed, he has a fitting end to the public life of a true American villain.

It was no secret that Mr. Arpaio's methods often crossed the line into the not-so-legal

For nearly a quarter-century, Sheriff Joe Arpaio was a disgrace to law enforcement, a sadist masquerading as a public servant. In a just system, we would not see his like again.

82.     These statements are misleading and false.

83.     These statements, made with actual malice, place Plaintiff in a false light that would be highly offensive to a reasonable person.

84.     As a direct and proximate result of Defendants' and their agents' extreme, outrageous and malicious defamatory conduct set forth above, Plaintiff Arpaio has been the subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against each Defendant, jointly and severally, as joint tortfeasors as follows: actual, compensatory, and punitive damages in excess of $147,500,000 USD, as well as attorneys' fees and costs, and any other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts, as to all issues so triable.

DATED: August 28, 2019                    Respectfully submitted,

                                          /s/ Larry Klayman
                                          Larry Klayman, Esq.
                                          Chairman and General Counsel
                                          FREEDOM WATCH, INC.
                                          2020 Pennsylvania Ave NW Suite 345
                                          Washington, DC, 20006
                                          Email: leklayman@gmail.com
                                          Tel: 310-595-0800
                                          []
                                          *Counsel for Plaintiff*