**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOSEPH MICHAEL ARPAIO**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHELLE COTTLE, et al.**<br><br>**Defendants.** | Case No. No. 1:18-cv-02387-APM |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Mara Gassmann (D.C. Bar No. 1014532)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
gassmannm@ballardspahr.com

*Counsel for Defendants*

Date: September 4, 2019

Defendants Michelle Cottle and The New York Times Company (together, "The Times" or "defendants"), through undersigned counsel, respectfully submit this memorandum of law in opposition to Plaintiff's Motion for Leave to Amend the Complaint ("Mot."), Dkt. 17.

## PRELIMINARY STATEMENT

In its Memorandum Opinion and Order of August 9, 2019 ("Op."), Dkt. 16, the Court dismissed Plaintiff Joseph Arpaio's Complaint because of his failure to plead a viable claim—including the failure to "plead any facts to support the key element of actual malice," or even the alleged "falsity of any of the Article's claimed defamatory statements." Op. at 9 & n.1. Arpaio fares no better on his second attempt. As with the original Complaint, the most revealing thing about the Proposed Amended Complaint, Dkt. 18-1 ("PAC"),[1] is what is missing. The PAC is devoid of a single factual allegation plausibly demonstrating that The Times knew or had reason to know any particular factual statement in the Article was false—or, again, even that any specific challenged statement *was* false. As before, these failings are dispositive. The PAC alternately relies on threadbare recitals of harm already rejected by the Court and conclusory assertions of purported conduct by The Times that, even if they had been plausibly supported by factual allegations, as a matter of law are not the kinds of conduct that would support a finding of actual malice. Nor do Arpaio's new claims for "General Defamation" and "Defamation by Implication," which similarly fail to allege anything other than threadbare recitals of the law, rescue his pleading.

What is apparent from this exercise is that, while the self-described "America's Toughest Sheriff" may dislike the Article that The Times published about his controversial legacy, this

[1] Arpaio initially filed his proposed amended complaint as an exhibit to his Motion for Leave to Amend. *See* Dkt. 17-1. Pursuant to the Court's direction, Arpaio then filed a redline version of the pleading at Dkt. 18-1, which is the version to which defendants cite herein as the PAC.

prominent public figure cannot plausibly state a claim. In other words, even supplemented as he proposes by the PAC, the pleading still fails as a matter of law. Because leave to amend would be futile, the Court should deny the Motion and dismiss this lawsuit with prejudice.

## ARGUMENT

### I. LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE

Plaintiff concedes, as he must, that leave to amend a complaint is properly denied when amendment would be futile. Mot. ¶ 2; *see, e.g., In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). When considering whether amendment would be futile, a court reviews the proffered claims and supporting factual allegations as it would when deciding a motion under Federal Rule 12(b). *See Klayman v. Judicial Watch, Inc.*, 288 F. Supp. 3d 314, 318-20 (D.D.C. 2018) (denying motion to amend complaint for intentional infliction of emotional distress as futile where plaintiff failed "to supply the level of factual detail necessary to sustain his allegations"), *reconsideration denied*, 296 F. Supp. 3d 208 (D.D.C. 2018); *He Depu v. Yahoo! Inc.*, 334 F. Supp. 3d 315, 321-23 (D.D.C. 2018) (denying motion as futile because "slight wording differences" to allegations did not make them "new" or rescue complaint from infirmity of "conclusory allegation"); *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 235 (D.D.C. 2018) (denying leave to amend where inadequate new factual allegations did not "clear the 'plausibility' hurdle" and deficiencies to complaint could not be cured by amendment).

Thus, Arpaio's contention that leave should be granted because The Times would not suffer "undue prejudice," Mot. ¶ 2-5, is a *non sequitur*. The issue is futility, and none of the cases he cites supports leave to amend here. In *Djourabchi v. Self*, 240 F.R.D. 5 (D.D.C. 2006)

(cited at Mot. ¶ 2), the issue was whether a plaintiff, in a pending action in which the scheduling order had not yet issued, should be permitted to add a third count to his existing pleading. *Id.* at 12-14. Unsurprisingly, that court found no prejudice to the opposing party. *Id.* The court did not assess the prejudice to a defendant of having to litigate an action already determined by the court to fail as a matter of law. *Id.* Arpaio's reliance on *Atlantic Bulk Carrier Corp. v. Milan Express Co.*, 2010 WL 2929612 (E.D. Va. July 23, 2010) (cited at Mot. ¶ 2) is similarly inapt. There, too, a party in an ongoing matter sought leave to add a counterclaim—one that the court observed stated a plausible claim for relief. *Id.* at *4. And, in the third and final case cited by Arpaio for the proposition that amendment should be permitted here due to a purported lack of burden on The Times, the court denied leave to amend. *Teltschik v. Williams & Jensen*, 683 F. Supp. 2d 33, 42 (D.D.C. 2010) (cited at Mot. ¶ 4).

All apart from the obvious prejudice of being forced to litigate claims that are facially defective, a party opposing amendment is not required to show prejudice where, as here, amendment would be futile. *Klayman*, 288 F. Supp. 3d at 320 (denying leave to amend because even if "granting [the motion] would not prejudice Defendants, Plaintiff's proposed amendment would be futile" due to lack of specificity in his allegations).[2] As The Times establishes below,

[2] Although courts as a general matter grant leave to amend freely where justice requires, Arpaio cites no case holding that justice requires the allowance of futile amendments. The law is expressly to the contrary. Moreover, the pre-*Iqbal/Twombly* cases he cites for the proposition that leave is favored are inapposite here. *See Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004) (holding plaintiff was entitled to amend as of right while motion to dismiss was pending) (cited at Mot. ¶ 2); *Belizan v. Hershon*, 434 F.3d 579, 584 (D.C. Cir. 2006) (reversing district court because it dismissed with prejudice without articulating reasons or considering whether deficiencies could be cured with new facts) (cited at Mot. ¶ 2); *Foman*, 371 U.S. at 182, (reversing because district court's "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion") (cited at Mot. ¶ 2); *Richardson v. United States*, 193 F.3d 545, 548-59 (D.C. Cir. 1999) (reversing district court because it dismissed complaint of *pro se* litigant without considering all his filings in opposition to motion) (cited at Mot. ¶ 2).

because the PAC, like the Complaint, fails to plead factual allegations plausibly establishing essential elements of Arpaio's claims, leave should be denied and the case dismissed with prejudice.

## II. THE PAC'S NEW CONCLUSORY ALLEGATIONS CANNOT PLAUSIBLY SUPPORT A FINDING OF ACTUAL MALICE OR FALSITY AS A MATTER OF LAW

Arpaio does not dispute that "actual malice" fault is an element of the PAC's First, Second and Third Causes of Action for defamation and his Fifth Cause of Action, or that his failure adequately to plead this element was one of the reasons the Court dismissed the related counts in his original Complaint. Op. at 9. A review of Arpaio's proposed new pleading reveals the addition of multiple boilerplate assertions that The Times "acted with actual malice," *e.*g., PAC ¶¶ 23, 25-27, 33-39, or "avoided learning the truth," *e.g.*, *id.* ¶¶ 25, 41, but no *factual* allegations to undergird these assertions. Instead, Arpaio proffers broad and conclusory themes, summarized at PAC ¶ 31: that The Times failed to investigate and seek comment, *id.* ¶ 31(1)-(2); had ill will toward and preconceived views about him, *id.* ¶ 31(3), (5)-(8)[3]; and engaged in "sensationalism and 'muckraking,'" *id.* ¶ 31(4).[4] These conclusory allegations are legally insufficient. *See* Op. at 5 ("The court need not accept as true, however, 'a legal conclusion

---

[3] In his list, Arpaio repeats No. 7. For clarity, defendants refer to the final item on the list, "ill-will or hostility that Defendants' harbor for Plaintiff Arpaio," as No. 8.

[4] The PAC also characterizes The New York Times as "the most sophisticated, most knowledgeable and most well funded publication," comprised of "world-renowned, sophisticated journalists" who "know what is true." PAC ¶ 24. The Times appreciates the compliment. Respectfully, however, this allegation weighs heavily *against* the plausibility of any alleged purposefully false publication—especially where, as the Court recognized, Arpaio has not alleged facts establishing that anything he challenges in the Article is *false*, Op. at 9 n.1, and where, to the contrary, every fact included in the Article is supported by an extensive public record, *see, e.g.*, Mem. in Supp. of Defs.' Mot. to Dismiss ("Times Mem.") at 6-27, Dkt. 8, which Arpaio has not disputed.

couched as a factual allegation.'") (citations omitted). Moreover, even if the conclusory themes *were* supported by pleaded facts, they would not constitute actual malice as a matter of law. Indeed, the Court has already rejected several of Arpaio's recycled arguments.

### A. None Of Arpaio's Factual Allegations Plausibly Could Establish Actual Malice

As the Court has noted, unadorned assertions of actual malice do not satisfy the pleading burden because they are pure legal conclusions. Op. at 5; *see* also Defs.' Reply in Supp. of Mot. to Dismiss ("Times Reply") at 7, Dkt. 14. Thus, the addition of bald allegations of "actual malice" and other legal boilerplate to the PAC are properly disregarded in assessing the sufficiency of the pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017). The First Circuit summarized the proper analysis of an allegation of actual malice:

> To begin, the court must strip away and discard the complaint's conclusory legal allegations. Next, the court must determine whether the remaining *factual* content permits "the reasonable inference that the defendant is liable for the misconduct alleged."
>
> In this case, the plausibility standard operates in conjunction with the substantive law of defamation. As a matter of constitutional bedrock, a plaintiff must show fault in order to impose liability upon a defendant for defamation. . . . In determining whether [fault] allegations cross the plausibility threshold, an inquiring court need not give weight to bare conclusions, unembellished by pertinent facts.

*Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012) (emphasis added) (citations omitted). As in *Shay*, and as it did in its Opinion, this Court should "strip away and discard" Arpaio's legal and conclusory allegations, and consider whether any remaining factual allegations could plausibly establish actual malice. They do not.

**1. An alleged failure to investigate is belied by the Article and legally irrelevant to actual malice**

Arpaio alleges that defendants' knowledge of falsity can be inferred from their purported "failure to investigate seriously false allegations," *see* PAC ¶ 31(1), or to "seek comment from Plaintiff Arpaio or his lay or legal representatives," *id.* ¶ 31(2); *see also id.* ¶¶ 26, 34-37. The plausibility of the claimed failure to investigate falters in the face of the Article itself, which sets forth in detail the public record upon which Cottle's opinion was based. *See* Article; *see also* Op. at 2-3; Times Mem. at 42-43.

But this conclusory allegation suffers a fundamental legal flaw as well. Because actual malice is a subjective standard focused on a defendant's awareness of falsity, an alleged failure to conduct an investigation is not probative of actual malice unless the disputed statement was patently unbelievable on its face. As the Supreme Court underscored in *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 666 (1989), the actual malice issue is not whether a publisher "could have" investigated further, but whether the publisher had a subjective awareness of the statement's probable falsity at the time of publication. Even in circumstances where a failure to investigate would constitute "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers," that would not establish actual malice, unless the publisher had "obvious reasons to doubt" the truth of the information. *Id.*; *see also, e.g.*, *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594–95 (D.C. Cir. 2016) (plaintiff's "reliance on insufficient investigation by [defendant as circumstantial evidence of actual malice] is a non-starter. . . . [The writer] had not discovered anything that caused him to

doubt his conclusion about [plaintiff] and therefore was under no obligation to investigate further") (collecting cases).[5]

Thus, in *Schatz v. Republican State Leadership Commission*, a plaintiff's allegations that a defendant reprinted previously published allegations without "'any additional investigation' to determine whether what was said was true," or any other "'additional' legwork," were insufficient as a matter of law to allege a plausible claim of actual malice. 669 F.3d 50, 56-58 (1st Cir. 2012). The Seventh Circuit reached the same result in *Pippen v. NBCUniversal Media, LLC*, in which it observed that, "[i]f rather than relying on the rumor mill the defendants had conducted even a cursory investigation, they would have discovered that" the assertions in their stories were untrue, but nevertheless affirmed dismissal on the pleadings because "failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth." 734 F.3d 610, 614 (7th Cir. 2013).

Nor is the fact that The Times did not seek comment from Arpaio evidence of actual malice. The Article commented on Arpaio's legacy in light of an extensive and, in this litigation, factually undisputed public record. That a writer would choose not to question directly the subject of criticism, "who might reasonably be expected to deny" unfavorable statements about him, "is neither surprising nor required." *Jankovic*, 822 at 595; *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1511 (D.C. Cir. 1996) (defendant's "failure to contact" plaintiff does not support "a finding of actual malice," particularly given that "denials are so commonplace in the world of polemical charge and countercharge"); *Lohrenz v. Donnelly*, 350 F.3d 1272, 1286

[5] As The Times demonstrated in its motion papers, the Article's statements about Arpaio were far from obviously of doubtful accuracy given the extensive public record supporting them. *See generally* Times Mem. at 6-27.

(D.C. Cir. 2003) (no actual malice where defendants did not attempt to contact plaintiff); *see also Pippen*, 734 F.3d at 614 (same).

**2. Purported "ill will" toward Arpaio or "slant" against his political views does not demonstrate actual malice**

Arpaio next alleges that defendants' purported "hostility, anger, and retaliation to 'get' Plaintiff Arpaio because of his conservative stance on immigration and outward support for President Trump," PAC ¶ 31(3), are evidence of actual malice; *see also id.* ¶¶ 31(5), 31(8), 26, 28-29, 39. Relatedly, he claims that such a state of mind can be inferred from defendants' "preconceived view or slant." *Id.* ¶ 31(6); *see also* ¶¶ 31(7), 33.[6]

Arpaio pleads no *facts* that suggest defendants were out to "get" him, and the conclusory pleading fails on this basis alone. But the conclusory allegation also suffers a more fundamental legal flaw. The Court already considered whether "actual malice can be inferred" from defendants' supposed "'political partisanship and liberal bias.'" Op. at 8 (quoting Arpaio's briefing). The answer was—correctly—no. *Id.* (citing *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987)); *see also Harte-Hanks Commc'ns*, 491 U.S. at 666 (it is "worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term"); *Henry v. Collins*, 380 U.S. 356 (1965) (reversing libel judgment where jury instruction could be read to require mere intent to inflict harm rather than intent to inflict harm through false statements); *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 597

[6] Arpaio also claims that defendants "admitted[]" to publishing with actual malice in the passage from the Article stating, "'Some might consider it ungenerous to celebrate Mr. Arpaio's electoral failure and continuing slide into irrelevance. But the man has a long and storied history of mistreating people in unfortunate circumstances, so it seems only appropriate to return the favor.'" PAC ¶ 39. Not so. Arpaio appears to conflate an attitude toward *him*, which might be relevant to evaluating *common law malice*, with an awareness of the falsity or likely falsity of a challenged statement, the inquiry relevant here to *constitutional* actual malice. *Harte-Hanks Commc'ns*, 491 U.S. at 666-68.

(D.C. Cir. 1988) (no actual malice by publishers of highly critical articles describing plaintiff's political activities and associations); *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 91 (D.D.C. 2012) ("ideological opposition alone" cannot support actual malice).

Similarly, Arpaio's vague assertion that the Article was "preconceived" does not establish knowledge of falsity or a high degree of awareness of likely falsity: A purported preconception "is not antithetical to the truthful presentation of fact" and here does nothing to show actual malice. *Jankovic*, 822 F.3d at 597 ("argument that [writer] had concocted a pre-conceived storyline . . . fails to establish actual malice" even if the writer "may have adopted an adversarial stance toward" people like plaintiff who "he had come to believe were deserving of suspicion") (citing *Piro*, 817 F.2d at 795; *McFarlane*, 91 F.3d at 1511; *see also Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 48 (D.D.C. 2002) ("Any 'pre-existing agenda,' even one which may be noxious to some minds, is not indicative of actual malice."), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).

**3. A supposed interest in "sensationalism" does not show actual malice**

Arpaio finally—and again baldly—asserts that actual malice can be inferred because defendants supposedly engaged in "sensationalism and 'muckraking.'" PAC ¶ 31(4); *see also id.* ¶ 29 ("Defendants intentionally desired to . . . 'muckrake' [Arpaio]"). As with Arpaio's other allegations, he proffers no facts to support his threadbare recitals, so it is impossible to know to what he refers. However, the mere fact that a media enterprise is a commercial entity with a profit motive is not evidence of actual malice. *See, e.g.*, *Foretich v. Am. Broad. Cos.*, 1997 WL 669644, at *8 (D.D.C. Oct. 17, 1997) (media defendant's "focus on popular success of [its] docudrama and on economic gain" were not indicia of actual malice).

### B. Arpaio Is Not Entitled To Discovery On Actual Malice

Perhaps recognizing that he cannot prevail on his amended, but still facially deficient, recitals of boilerplate actual malice allegations and conclusory theories, Arpaio alleges that "[b]efore any motion to dismiss can be granted, Plaintiff Arpaio is entitled to discovery on Defendants' inner workings in order to prove actual malice." PAC ¶ 32. In so doing, he repeats arguments that were already squarely rejected by this Court, Op. at 7, and relies on pre-*Iqbal-Twombly* decisions that no longer reflect the applicable pleading standard, PAC ¶ 32 (citing *Herbert v. Lando*, 441 U.S. 153 (1979), and *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002)); *see also* Times Reply at 6 n.2.

Under the standard of *Iqbal/Twombly*, the Rule 8 pleading burden prevents plaintiffs from "unlock[ing] the doors of discovery… armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678-79, and courts therefore properly dismiss claims where plaintiffs—like Arpaio here—can offer no more. Accordingly, and contrary to Arpaio's assertions, "pleading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279–80 (S.D.N.Y. 2013) (citations omitted), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

### C. Arpaio Also Fails To Remedy His Pleading Deficiencies Regarding Falsity

As the Court observed in its Opinion, Arpaio "offers no factual allegations to plausibly support the falsity of any of the Article's claimed defamatory statements." Op. at 9 n.1. In the PAC, Arpaio does not even attempt to cure this "deficiency of the pleading." *Id.* Although Arpaio castigates defendants for supposedly failing to investigate the "seriously false" statements in the Article, and alleges that defendants were "repeatedly lying in the article," PAC ¶¶ 31(1), 38, he continues to fail to allege *facts* plausibly demonstrating any material falsity in the Article,

which, like actual malice, is a necessary element of his claim. *See Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974) ("the *sine qua non* of recovery for defamation . . . is the existence of falsehood"); *see also* Times Mem. at 32 n.17. Nor could Arpaio successfully do so, given the extensive public record regarding his conduct. *See generally* Times Mem. at 6-27. For this independent reason, too, amendment would be futile. *See, e.g.*, *Libre By Nexus v. BuzzFeed*, 2018 WL 6573281, at *3 (D.D.C. Dec. 13, 2018) (Mehta, J.) (dismissing amended defamation complaint with prejudice because, "just like its earlier complaint, Plaintiff's Second Amended Complaint fails to allege facts that would support a plausible inference that Defendants' reporting . . . was false").

### D. Arpaio's Deficient Allegations Of Actual Malice Are Not Cured By Repackaging His Defamation Claim As One For "General Defamation" or "Defamation By Implication"

In the PAC, Arpaio introduces two new purported causes of action, labeled as "General Defamation" and "Defamation by Implication." Both fail for all of the same reasons outlined above. Indeed, the seven numbered paragraphs comprising the Second Cause of Action contain no factual allegations at all, merely cursory statements setting forth the law of defamation. This does not entitle Arpaio to relief. *E.g.*, *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (dismissing where plaintiff's "repeated assertion" that defendant had published with actual malice was inadequate "legal conclusion" not supported by relevant facts).

The Third Cause of Action likewise contains no factual allegations and only threadbare recitals of the law. Arpaio first alleges that defendants "juxtaposed a series of facts so as to imply a defamatory connection between them" and "published false statements" that "created a false impression of" Arpaio. PAC ¶¶ 65-66. Arpaio fails, however, to identify such allegedly false facts, the implications he believes were conveyed, or the language he contends together

created those implications. He next alleges that defendants juxtaposed a series of facts "so as to imply a defamatory connection" *or* "created a defamatory implication by omitting facts when describing the nature and sequence of events." *Id.* ¶ 66. Yet he again neglects to point to any fact, any "series" of facts, or any "omitted" facts whatsoever. Arpaio then alleges that the Article "impart[ed] the false innuendo," *id.* ¶ 67, but declines to say what that innuendo was. Finally, Arpaio parrots the legal requirement that defendants "intended or endorsed the defamatory inferences that the published statements created," *id.* ¶ 68, but fails to point to any language from the Article to support this conclusory allegation.

This is plainly deficient—indeed, it flips the law on its head. Plaintiffs have a greater, not lesser, burden of persuasion in alleging theories of defamation based on what a challenged publication allegedly implies, rather than on what it expressly states. In a decision cited in the PAC, the D.C. Circuit recognized that alleged defamation by implication is "an area fraught with subtle complexities," and cautioned that, "[i]n entertaining claims of defamation by implication, courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *White v. Fraternal Order of Police*, 909 F.2d 512, 518-19 (D.C. Cir. 1990) (cited at PAC ¶ 64). Thus, to state a claim for defamation by implication, litigants "must make an especially rigorous showing" both that the language can "be reasonably read to impart the false innuendo," and that the Article on its face "affirmatively suggest[s] that the author intends or endorses the inference." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993)). The PAC does not even attempt to make any such showing.

## III. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM STILL FAILS

As with his claims for defamation and false light, the PAC fails to remedy the fatal flaws in what is now Arpaio's Fourth Cause of Action, for tortious interference. First, because his tortious inference claim is premised on the same speech underlying the defamation claims, this claim fails for the same reasons outlined above. *See* Op. at 9-10 (noting that when the two torts are "'based upon the same allegedly defamatory speech,'" they rise and fall together). What is more, the Court previously held that this claim "would fail anyway, based on the sparse facts pleaded," and went on to address elements entirely unsupported by Arpaio. *Id.* at 10. Yet again in the PAC, Arpaio "does no more than parrot the legal requirement." *Id.* The few additions to Arpaio's allegations consist primarily of adverbs, adjectives and conclusory recitals of harm. *See generally* PAC ¶¶ 70-77. There is not a single additional factual allegation to be found. This is inadequate, and on both of these independent grounds the proposed amendment as to this cause of action would be futile.

## CONCLUSION

For each and all the foregoing reasons, The Times respectfully requests that this Court deny the Motion, dismiss this case with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: September 4, 2019

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Jay Ward Brown*

Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Mara Gassmann (D.C. Bar No. 1014532)
1909 K. Street, NW, 12th Floor
Washington, D.C. 20006-1157
Telephone: (202) 661-2200

Fax: (202) 661-2299
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
gassmannm@ballardspahr.com

*Attorneys for Defendants*